544    APPELLATE COURT OF INDIANA,

Baltimore and Ohio and Chicago Railroad Company *et al. v.* Leathers.

No. 1,255.

### THE BALTIMORE AND OHIO AND CHICAGO RAILROAD COMPANY ET AL. *v.* LEATHERS.

BILL OF EXCEPTIONS.—*Not Signed by Judge.*—A bill of exceptions not signed by the presiding judge is not properly a part of the record.

NEGLIGENCE.—*Law and Fact.—Master and Servant.*—There are cases in which the court may rule as a matter of law that certain appliances and the manner of their construction are reasonably safe or unsafe, and that the master is or is not negligent in providing them; and between these two extremes there is a large number of instances in which negligence or want of negligence of the master in providing given appliances is a question for the jury.

SAME.—*Law and Fact.—Master and Servant.—Railroad.*—Whether or not a railroad company was guilty of negligence in providing a car with the brake staff and wheel projecting near the center of the running board, whereby a brakeman was injured, is a question for the jury.

MASTER AND SERVANT.—*Assumed Risk.—Law and Fact.— Obvious Danger.*—As a general rule, when the danger to a servant in the prosecution of his employment is open and obvious, he assumes the risk. He is bound to make use of his senses, and if he proceed to work when he knew or could have known of the danger by using his senses, he will be deemed to have accepted the risk. But there is a class of cases where the danger is obvious, in which the assumption of the risk can not be ruled as a matter of law, but is a question for the jury, viz.: Where the servant is surrounded by extraordinary circumstances not of his own making, or where his attention was diverted from the danger by great or more important duties to his master.

SAME.—*Assumed Risk.—Law and Fact.—Railroad.—Brakeman.—Personal Injury.*—Where a car was so constructed that the brake staff and wheel projected near the center of the running board, of which fact the brakeman was ignorant, and in response to an urgent call to loosen brakes, and hurriedly attempting to find the brake or brakes that were holding the train, and in so doing his attention was diverted from a danger (the brake staff and wheel so constructed) which might otherwise have been apparent, and is injured by tripping upon the same, the question of assumed risk is a question for the jury.

SAME.—*Assumed Risk.—Exigencies of Case.*—In such case, it was proper for the jury to take into consideration all the exigencies of

the occasion, and the things that operated most strongly on the servant's mind, in determining whether or not he assumed the risk.

VERDICT.—*Sufficiency of Evidence.*—That the evidence is sufficient to sustain the verdict, see opinion.

Dissenting Opinion by Ross, J.

From the DeKalb Circuit Court.

*J. H. Collins,* for appellants.

*W. L. Penfield,* for appellee.

LOTZ, J.—The appellee was in the employ of the appellants as a brakeman, and was injured by falling from the top of a car. He brought this suit to recover damages for the injury sustained.

In his complaint he averred that near the center of the train of freight cars on which he was engaged as a brakeman one of the defendant's cars had been by them negligently constructed and negligently provided with an unsafe and narrow running board, and that the brake wheel attached to said car was negligently constructed and maintained, so that the brake wheel projected over the running board and made the passageway along said board narrow, unsafe and dangerous for the use of the plaintiff as such brakeman; that while the plaintiff was passing along the top of the cars to loosen the brakes, as he was required to do in the line of his duty, he came to the end of the car, where the running board, brake and brake-wheel had been negligently provided and constructed, and while attempting to pass upon said car, and along said running board, and while in the exercise of due and reasonable care on his part he fell from said running board and car; that his loss of foothold and fall was caused solely by and through the negligence of the defendants in failing to provide reasonably safe and suitable appliances and

safe and suitable place for the plaintiff to perform his duties as such brakeman; that the plaintiff at no time had any notice of any defects nor of the narrow and defective running board, nor of the manner in which the running board, brake and brake wheel were constructed and adjusted; that the defendant, at all times, had notice of such defects.

There are other acts of negligence charged in the complaint, but as there was no evidence to support them it is unnecessary to set them out. If there be several acts of negligence charged, the proof of any one of them will support a recovery.

Counsel for appellants concede that the complaint is sufficient to withstand the demurrer. This disposes of the first assignment of error.

The overruling of appellants' motion to make the complaint more specific and of the motion to strike out parts of the complaint are each assigned as error. Neither of these motions is properly brought into the record by the bill of exceptions. The bill of exceptions embodying them is not signed by the presiding judge. Had these motions been properly in the record there was no available or reversible error in overruling them.

The overruling of the motion for a new trial is also assigned as error. It is contended that the verdict is not supported by the evidence.

There was evidence which tended to prove, substantially, this state of facts, that the appellants were operating a railroad and that the appellee was in their employ as a freight brakeman; that on or about the 21st day of January, 1892, a freight train composed of a locomotive engine, tender, caboose and a number of freight cars, was standing on a railroad track in the yards owned by appellants at Chicago Junction, Ohio, ready to start on a west bound run to the town of Garrett, Indiana; that

in order to keep the train stationery and prevent it from moving out of the yard on said track, it was necessary to set and keep set the brakes on the train, and that the brakes on the train had been set for that purpose; that it was necessary to unset the brakes, so that the train might proceed upon its west bound run; that the manner in which the brakes were set and unset was by means of brake staffs extending above the top of the cars with a wheel on the top end and a ratchet wheel at either the lower end or near the top of the car; that in order to set or unset the brakes it was necessary for the brakeman to pass along the top of the cars, passing from one to the other; that near the center of the train was a freight car, so constructed that the running board on the top thereof was narrow and the brake-staff and wheel projected above the top of the car and near the center of the running board; that the appellee was employed as a brakeman on said train; that between the hours of 2 and 4 o'clock in the afternoon of said day the engineer made an effort to move the train on its course, but that owing to the fact that one or more of the brakes had not been unset the engineer gave a signal to the brakeman to find and unset the brake or brakes that prevented the train from being moved; that the appellee, who was in the caboose at the time the signal was given, ascended to the top of the cars and proceeded hurriedly along the running boards on the top thereof to find and unset the brakes which held the train; that in so doing his attention was directed to the ratchet wheels on the brake-staffs, that he might ascertain which one or ones were set; that in so doing he reached the car near the center of the train, with the narrow running board and with the brake-staff and wheel projecting above the car near the center of the board, and while passing thus hurriedly along he did not notice the position of the brake-staff and wheel on

said car, and while in the act of jumping from the running board of another car to this one his foot struck the brake wheel and he was thrown off his balance, and when he alighted on the narrow running board, slipped and fell to the ground and sustained injuries; that the appellee had no previous knowledge of the brake wheel or staff. The construction of the car, as to the width of the running board and the position of the brake wheel and staff, were open and apparent and could have been seen by any person whose attention was not directed elsewhere.

It is the duty of the master to provide his servants with reasonably safe places in which to work, and suitable and reasonably safe appliance with which to work. No point is made by the appellants that the evidence fails to show negligence on their part in failing to provide a safe place or appliances, but we may say in passing that the master is not bound to furnish the best and most approved machinery and appliances. Nor can the courts as a general rule determine what particular form or kind of machinery and appliances, or the manner of their construction, which the master must provide for his servants. There may be cases in which the court may rule as a matter of law that certain appliances and the manner of their construction are reasonably safe or unsafe, and that the master is or is not negligent in providing them. But between these two extremes there is a large number of instances in which the negligence or want of negligence of the master in providing given appliances is a question for the jury. So in this case at the least it was a question for the jury to say whether or not the appellants were or were not guilty of negligence in providing the car with the brake staff and wheel projecting near the center of the running board.

It is next contended that the appellee assumed

the risk, and for that reason he can not recover. The assumption of the risk, or contributory negligence as it is sometimes improperly called, like the question of negligence may in some instances be ruled as a matter of law, and it may sometimes be a question for the jury. The general rule is, that when the machinery and appliances are so placed and constructed that the danger is open and obvious the servant assumes the risk. He is bound to make use of his senses, and if he proceed to work when he knew or could have known of the danger by using his senses, he will be deemed to have accepted the risk. But there is a class of cases where the danger is obvious in which the assumption of the risk can not be ruled as a matter of law, but is a question for the jury. If a servant be surrounded by extraordinary circumstances not of his own making, or if his attention be diverted from the danger by great or more important duties to his master, it is a question for the jury to say whether or not he assumed the risk. In the case at bar it was the duty of the appellee to assist in moving the train. It may have been necessary to move it quickly in order to get it out on scheduled time, and thus prevent pecuniary loss, to prevent delay and confusion in the operation of other trains, and the business of the company. It may have been necessary to get the train out of the way to prevent collision, loss of property and life. When an urgent call is made by the conductor, the brakeman can not always know the cause for it. Here there was an urgent call to loosen the brakes. The appellee in the discharge of his duty hurriedly attempted to find the brake or brakes that were holding the train, and in so doing his attention was diverted from a danger which otherwise would have been apparent. Had he discovered the position of the brake wheel, and the manner in which the running board was constructed,

and refused to encounter the risks, thus abandoning his post of duty, such abandonment would necessarily have resulted in delaying the operation of the train, confusion in conducting the business of the company and in a possible loss of life and property. The servant's fidelity to duty, and his devotion to his master's interest ought not be turned to his disadvantage, and used to shield or screen the master from liability unless the danger was so imminent as to subject him to the charge of recklessness in remaining at his post. It was proper for the jury to take into consideration all the exigencies of the occasion, and the things that operated most strongly on the appellee's mind in determining whether or not he assumed the risk. It was here a question for the jury, and not one of law for the court.

In *Kane* v. *Northern Cent. R. W. Co.*, 128 U. S. 91, 9 Sup. Court Rep. 16, the facts were that the plaintiff, a brakeman on defendant's freight train, while making a trip on a cold, stormy night, discovered that a step was missing from one of the cars between his place of duty and the caboose, and at once notified the conductor, who promised to drop the car at a certain point if he found it did not contain perishable freight. Before reaching that point the train stopped at a station, and the plaintiff went back to the caboose as was his custom to warm himself and eat his breakfast. The train suddenly started, and the plaintiff hastily ran over the top of the cars to resume his part as was his duty. When he reached the defective car he forgot about the missing step, and in attempting to let himself down fell, and was injured. The court held on this state of facts that the question of contributory negligence or the assumption of the risk was one for the jury, and not a question of law for the court.

In the course of the opinion the court, by Justice

HARLAN, said: "It can not be said that the plaintiff was guilty of contributory negligence in staying upon the train, in the capacity of brakeman, after observing that a step was missing from one of the cars over which he might pass while discharging his duties.

"An employe upon a railroad train, likely to meet other trains, owes it to the public, as well as to his employer, not to abandon his post unnecessarily. Besides the danger arising from the defective car was not so imminent as to subject him to the charge of recklessness in remaining at his post. * * * But it is said that the efficient, proximate cause of the injury to the plaintiff was his use of the defective appliances at the end of the car from which he fell, when he knew, and, at the moment of letting himself down from that car, should not have forgotten, as he said he did, that one of its steps was missing.

"It is undoubtedly the law that an employe is guilty of contributory negligence, which will defeat his right to recover for injuries sustained in the course of his employment, where such injuries substantially resulted from dangers so obvious and threatening that a reasonably prudent man, under similar circumstances, would have avoided them if in his power to do so. * * * But in determining whether an employe has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position, indeed, to all the circumstances of the particular occasion.

"In the case before us, the jury may, not unreasonably, have inferred from the evidence, that while the plaintiff was passing along the tops of the cars for the purpose of reaching his post, he was so blinded or confused by the darkness, snow, and rain, or so affected by the severe

cold, that he failed to observe, in time to protect himself, that the car from which he attempted to let himself down was the identical one which, during the previous part of the night, he had discovered to be without its full complement of steps.  While a proper regard for his own personal safety, and his duty to his employer, required that he should bear in mind, while passing over the cars to his station, that one of them was defective in its appointments, it was also his duty to reach his post at the earliest practicable moment, for not only might the safety of the moving train have depended upon the brakemen being at their posts, but the engineer was entitled to know, as the train moved off, by signals from the brakesman, if necessary, that none of the cars constituting the train had become detached.''

So, in the case at bar, it was the duty of the jury to take into consideration all the exigencies of the occasion, the hurry under which the appellee acted and the fact that his attention was diverted to the ratchet wheels in determining whether or not he assumed the risk.  There was evidence which tended to show that the appellee was not guilty of contributory negligence, or that he did not assume the risk.  *Pennsylvania Co.* v. *Sears*, 136 Ind. 460.

It is further insisted that the evidence shows that the car from which the appellee fell was a passenger car and that the appellants owed appellee no duty of inspection as to the manner of its construction.  But there was some evidence which tended to show that the car from which appellee fell was a car owned by appellants. It is lastly contended that there was no evidence whatever to show that one of the appellants, the Baltimore and Ohio and Chicago Railroad Company, had anything to do with operating the train or the railroad.  But there was some evidence which tended to show that it operated the train

and road jointly with the other appellant and the jury in answer to interrogatories so found.

We find no reversible error in the record.

Judgment affirmed.

GAVIN, J., concurs in the result.

Filed May 28, 1895.

## DISSENTING OPINION.

Ross, J.—It appears to me that my associates misconceive the material question presented in this case. The appellants contend that the facts, about which there is little, if any, controversy, fail to show actionable negligence on the part of the appellants. To solve this question requires us to determine whether or not the appellants violated any duty owing from them to the appellee, and this involves two propositions, namely: First. Is the master under any legal obligation to supply his servant with any particular kind, make or design of machinery, implements or appliances with which to work in carrying on the business of the master; and, second, What risks, if any, does the servant assume by virtue of his contract of employment?

Under the first proposition this question arises: Can a servant recover for an injury which results from the usual and ordinary use of machinery furnished him by the master, because it was of a particular kind, and not of another and different kind, more improved and less dangerous to operate? In other words, is the master bound to furnish the servant with any particular make or kind of machinery, or is his duty performed when that furnished is properly made and free from defects?

In this case the evidence discloses that the appellee was employed as a freight brakeman by the appellant, the Baltimore and Ohio Railroad Company; that on the 21st day of January, 1892, at some time between 4 and 5

o'clock in the afternoon one of the company's freight train, upon which appellee was performing his duties as brakeman, was preparing to leave Chicago Junction, Ohio, for Garrett, Indiana; that when the engineer attempted to start the train it refused to move on account of a brake which was set on some car in the train. On a signal given by the engineer by whistling the appellee started over the train from the rear end thereof to find the set brake and release it, this being one of his duties under his contract of employment; that he walked along the running boards of the cars looking at the ratchet wheels of the brakes on each car and when near the middle of the train, as he jumped from the end of one car onto the next one, his foot touched the brake wheel and threw him off his balance, and when he alighted on the running board he slipped and fell and rolled off the side of the car, injuring him.

It appears, also, from the evidence, that some of the cars which made up the train were constructed with the brake wheel and attachments on the end of the car, so that the brakeman, in setting them or letting them off when set, had to descend between the cars; and other cars in the train were constructed with the brake staff extending above the top of the car, and upon the top of the brake staff was the brake wheel which was used by the brakeman in setting the brakes. The ratchet and ratchet wheel being some inches below the brake wheel. The brake, the brake wheel of which appellee's foot touched and threw him off his balance, was of this latter kind, with the rod or brake staff extending above the top of the car and a little to one side of the running-board, while the brake wheel thereof extended part way over the running-board, which was narrow.

The appellee testified that he did not observe, before he jumped, that the running-board was narrow, or that

the brake wheel projected over the running-board, for his attention was directed toward the ratchet wheel to see if the brakes were set.   It is conceded that the position of the brake wheel and the narrowness of the running-board could have been seen by appellee if he had looked, because their position and condition were open and obvious.   The only excuse for his not looking being that his attention was directed to the ratchet wheel to see if the brake was set, to release which, if set, was the only duty he was performing at that time.   It does not appear, from the record, that the brake or any of its parts were out of repair, but it is conceded that the car and all of its attachments were in good condition and repair, the only contention on appellee's part being that the railroad company was negligent in using a car with a brake and brake wheel located as this one was.

It is a well settled proposition that the master owes it as a duty to those servants who are employed to work about and with machinery, where it is no part of their employment to construct the machinery itself or to keep it in repair, to use reasonable care not only to see that the machinery is free from defects, but that it is kept in reasonably good condition and repair.   What then is meant by the expression as made by the court, "reasonably safe machinery?"   Does it imply that the master shall furnish only such kind of machinery of the class suitable for doing the work required as shall be determined to be the best and safest, or does it simply require that while he may furnish any particular kind of machinery adapted to that purpose, he must use reasonable care to see that the machinery furnished is free from flaws and defects, which would increase the risks attendant upon the use from what would naturally flow from its use if in good condition and free from defects?

I believe I may assert, without fear of contradiction,

that the law imposes no duty on the master to provide any particular kind of machinery; that the only obligation resting upon him is that he shall use reasonable care to see that the machinery furnished is free from defects which enhance the dangers from its use and operation. For he may conduct his business in his own way, although another method might be better or less hazardous. So may he use a particular kind of machinery in preference and to the exclusion of all others, although some other might be better, do better work and be less dangerous to operate.

Text writers, as well as the courts, have stated the rule to be that, if the machinery or appliances are not imperfectly or defectively constructed, the master's duty is performed, notwithstanding better and safer machinery and appliances might have been had.

In *Wonder* v. *Baltimore, etc., R. R. Co.*, 32 Md. 411, it is said: "It is now settled that there is no contract obligation imposed upon the master, from the mere relation that he bears to the servant, to provide machinery of any particular character or description, to be operated by the latter," and, as said by COOLEY, J., in the case of *Michigan Central R. R. Co.* v. *Smithson*, 45 Mich. 212: "No railroad company, and no manufacturing or business establishment of any kind, is bound at its peril to make use only of the best implements, the best machinery and the safest methods. The State does not require it, and could not require it, without keeping such minute and constant supervision of private affairs and interfering with such frequency as under all circumstances would be irritating and damaging, and in many cases would become intolerable. In the main the State must leave every man to manage his own business in his own way. If his way is not the best, but nevertheless others, with a full knowledge of what his way is, see fit to coöperate with him in

it, the State can not interfere to prevent, nor punish him in damages when the risks his servants voluntarily assume are followed by injuries."

"Every corporation has the right to carry on a business which is dangerous, either in itself or in the manner of conducting it, if it is not unlawful, and interferes with no rights of others; and is not liable to one of its servants, who is capable of contracting for himself, and knows the danger attending the business in the manner in which it is conducted, for an injury resulting therefrom." *Ladd* v. *New Bedford R. R. Co.*, 119 Mass. 412.

In *Naylor* v. *Chicago, etc., R. W. Co.*, 53 Wis. 661, the court says: "It is well settled * * that the master may conduct his business in his own way, although another method might be less hazardous; and the servant takes the risk of the more hazardous method as well, if he knows the danger attending the business in the manner in which it is conducted. Hence, if a servant knowing the hazards of his employment as the business is conducted, is injured while employed in such business, he can not maintain an action against the master for such injury merely because he may be able to show that there was a safer mode in which the business might have been conducted, and that had it been conducted in that mode he would not have been injured."

In *Gould, Admr.*, v. *Chicago, etc., R. W. Co.*, 66 Iowa, 590, the court, in discussing the question as to whether or not a railroad company could be deemed negligent if it constructed a water-crane so close to its track that it endangered the lives of the servants operating trains on the road, said: "It is not true that a railroad company is to be regarded as negligent in erecting and maintaining contrivances or things for use in the operation of their roads, for the reason that they are 'dangerous to the persons operating the trains.' * * Indeed the whole

business of operating trains is dangerous. It is full of perils to those employed therein. Because there is danger, it does not follow that the companies are. negligent as to the things from which the danger springs.''

"Neither companies nor individuals are bound, as between themselves and their servants, to discard and throw away their implements or machinery upon the discovery of every new invention which may be thought or claimed to be better than those they have in use; but if they take ordinary care, and exercise ordinary prudence to keep their implements or machinery in sound repair, so that harm does not result to the servant for want of such sound condition of the implements or machinery used, then such individuals or companies will not be responsible to servants for any injury which may occur to them in the use of such implements and machinery.'' *McGinness* v. *Canada Southern Bridge Co.*, 49 Mich. 466.

The Supreme Court of our own State, in the case of *Lake Shore, etc., R. W. Co.* v. *McCormick*, 74 Ind. 440, states the rule thus: ''The master's obligation is not to supply the servant with absolutely safe machinery or with any particular kind of machinery; but his obligation is to use ordinary and reasonable care not to subject the servant to extraordinary or unreasonable danger. * * * Neither companies nor individuals are bound, as between themselves and their servants, to discard and throw away their implements or machinery upon the discovery of every new invention which may be thought or claimed to be better than those they have in use; but if they take ordinary care and exercise ordinary prudence to keep their implements or machinery in sound repair, so that harm does not result to the servant for want of such sound condition of the implements or machinery used, then such individuals or companies will not be responsi-

ble to servants for any injury which may occur to them in the use of such implements or machinery.''

The language last above quoted was approved in the case of *Louisville, etc., R. R. Co.* v. *Orr*, 84 Ind. 50 (56).

In *Pennsylvania Co.* v. *Long*, 94 Ind. 250, the trial court instructed the jury that if the couplers used, one being a Miller patent coupler and the other a common draw-bar coupler, were not fit to couple together, one being straight and the other crooked, and for that reason would not meet, it was culpable negligence in the railroad company to use such couplers, but the Supreme Court reversed the judgment of the lower court for giving such an instruction, and approved the language first above quoted from *Lake Shore, etc., R. W. Co.* v. *McCormick, supra.*

''The master is not bound to use the highest care, nor to secure the latest and most improved machinery, but he is bound to use care, skill and prudence in selecting and maintaining machinery and appliances, and for a negligent omission of this duty he is answerable to a servant injured by the omission,'' says ELLIOTT, J., in the case of *Indiana Car Co.* v. *Parker*, 100 Ind. 181.

In the case of *Jenney Electric Light and Power Co.* v. *Murphy*, 115 Ind. 566, MITCHELL, J., speaking for the court, says:   ''The employer does not, however, become an insurer of the employe against injury, nor does he covenant to supply tools and appliances that are safe beyond any peradventure or contingency, nor to furnish improvements of the best, or most improved, or of any particular design.''

Beach, in his work on Contributory Negligence, section 352, says:   ''It is obvious that, were the master the warrantor of the machinery in his factory, or the tools and appliances which he furnished to his servants—if he

were held, as to his servants, to guarantee that no harm should come from defects or faults in the instrumentalities employed in performing their labor, there would be no end to his liability. It would be a most mischievous doctrine. The possibility of injury from machinery, under the rule of law requiring ordinary care in respect to it from the master, is one of the proper risks that the servant takes into account when he enters the service. The tendency of one or two of the State courts to extend the rule as to the responsibility of the master in this regard until it shall amount, for practical purposes, to a warranty of all his tools and machinery and premises, is, in the writer's opinion, without any sound basis in the reason of the case, and it may easily be believed that such a rule, as a rule, would be as nearly wholly bad as any rule of law is ever likely to be.''

This is the language running all through the authorities upon this subject, and from these and others to which reference might be made the principle is fully and clearly established, that the master's duty is performed in this respect when he furnishes machinery free from such defects as would increase the hazard of the risk, which naturally flows from its use when free from defects. The reason for the rule is apparent, for if it were otherwise it would make the master an insurer of his servants' safety.

That the master is not an insurer is so well settled that I deem it unnecessary to discuss that branch further.

One who engages in the service of a railroad company in the capacity of a brakeman is presumed to understand the usual construction of cars and to be acquainted with and take upon himself all the ordinary risks incident to the performance of his duties with such cars. *Taylor* v. *Wootan, by Next Friend,* 1 Ind. App. 188;

*Parke County Coal Co.* v. *Barth*, 5 Ind. App. 159; *Griffin* v. *Ohio, etc., R. W. Co.*, 124 Ind. 326; *Brazil Block Coal Co.* v. *Hoodlet*, 129 Ind. 327; *Louisville, etc., R. W. Co.* v. *Hanning, Admr.*, 131 Ind. 529.

The duties which freight brakemen are required to perform are more or less hazardous, for they are called upon to couple cars, to go from one end of the train to the other over the tops of the cars while the train is in motion, to set and unset the brakes, to ascend and descend to and from the tops of the cars upon ladders or hand rails placed there for that purpose, and many other things which we will not attempt to enumerate. In doing these things the brakeman must and does incur great risks. But all these risks are but incident to the service. Now what duty does the master owe the servant, with reference to the machinery, appliances and implements which are furnished him with which to work? Must the master furnish cars constructed with a particular kind of a coupler, a brake made in a particular manner and located at a certain place upon the car, a ladder built with a particular number of steps, of a definite size, of a certain shape and located at a precise place, or is his duty performed in this respect when he has his cars equipped with couplings, brakes and ladders which are sufficient for the purpose intended, and free from defect?

To run a mill by steam is more dangerous than to run it by water, but does that prove that it is negligence in the mill owner to operate his mill with steam? It may be less dangerous for a brakeman to couple cars having draw-bars of an equal height and of the same pattern, and yet is it negligence to use cars with draw-bars of unequal height and different design? It may subject the servant to less risk if the cars he is called upon to

couple are constructed without deadwoods or bumpers, and yet is it negligence for the master to furnish cars some with deadwoods and some without? A ladder constructed on the side near the end of a car, and made out of iron rods fifteen inches in length, may be the safest and best for the use of the servant, but is the master guilty of negligence because he puts it on the end of the car and builds it with steps just large enough to rest the foot upon? While it may be true that a brake constructed in such a manner that it does not project above the top of the car, and which is operated by the brakeman after descending between the cars is less dangerous, or subjects the brakeman to less risks than a brake wheel which does project above the top of the car and is operated from on top of the car, and yet will the court undertake to say that the master is guilty of negligence if he constructs his cars with the brakes of the latter kind?

Every railroad man knows, and it is a matter of public knowledge, hence the court knows, that the air brake is the best and safest brake in use or known, and that its use subjects the brakeman to little or no risk, while the use of the hand brake places him in almost constant danger, and yet can the court say that it is the duty of a railroad to adopt the former and discard the latter?

If I gather correctly the purport of what is said in the majority opinion it is this; that in cases of this kind it is for the jury to determine as a question of fact how the machinery should be constructed. To such a proposition I can never give my concurrence. To so hold would be to leave to a jury the question as to whether or not "A," a farmer, should use a different kind of mower or reaper 'from the one he does; whether "B," a merchant, should arrange his shelves and storeroom according to a different plan from that adopted by him; whether "C,"

a manufacturer, should not discard his machinery, which answers his purpose, and adopt some other make because its operation is less hazardous; Whether a railroad company should use a certain make of engine—a Baldwin rather than a Hinkley; a car built by the Wagner company rather than one built by the Pullman company; cars with one kind of appliances rather than with others.

Similar comparisons might be made with reference to all the avocations of life, but I deem it unnecessary at this time to add to those given. If this is a question of fact to be determined by a jury, how is the master to know in advance which kind of machinery the jury will decide it was his duty to use? All persons apparently do not agree upon the machinery best adapted to a particular service. How, then, can the law declare to be a duty that which is uncertain, and which is an issuable fact to be determined by a jury in each particular case before it becomes certain?

In some cases it is very difficult to determine which of two ways of doing a thing is the better and the safer way, and in such cases witnesses could easily be found who would testify on either side, and that either way was a safer and a better way than the other. Can it be said that under these circumstances the law leaves it to a jury to determine the duty imposed? I can not believe that it is ever for the jury to determine the law, and yet if they are permitted to determine whether or not a duty exists they virtually decide and declare what the law is. A duty is that which the law declares one person owes to another. It is fixed, hence is the law. The law is not (at least its never presumed to be) vacillating. It never depends upon the whims or caprices of a jury. The court, and not the jury, declares the law. If the jury are to determine the duty which the employer

owes to the employe may we not have the anomalous rule that in two cases, one charging negligence in rejecting and the other in adopting the same device, the employer was guilty of negligence in both? Such a result, while very instructive, is inconsistent with a fair and proper administration of definite rules of law and justice.

Again, can a servant recover from his master for injuries received as a result of a risk assumed simply by showing that his mind was distracted from the hazard to the work he was doing? To so hold is to say that the servant assumes no risks except such as he has in mind at the time he is injured.

To say that a servant assumes all the risks naturally incident to the service, as has been held by every court of any respectability both in this country and in England, amounts to naught if an exception is to be made which has for its basis the condition of the servant's mind. It would not be the contract of hiring which would control the right of recovery, but the fact as to whether or not the servant, when he was injured, had forgotten that the services were attended with any risks.

It is here that I think my brother judges fail to make the proper distinction, for instead of considering the question as one of assumption of risk, they apply the rules applicable in cases where the question is whether or not the servant was guilty of contributory negligence.

There is a very wide difference in the application of the rules which control in these two different classes of cases. I am free to confess that much confusion has crept into the decisions for the same reason I am now urging in this case—that the rule applied is not the one pertinent to the case. In cases where the question arises as to whether or not the servant's negligence contributed to his injury, the contract of employment usually has no

bearing, while in those where the question is one of assumption of risk, the contract of employment controls.

The terms "contributory negligence" and "assumption of the risk" are not synonymous, although in numerous cases the proper distinction between them has not been made, and confusion has necessarily been the result. Contributory negligence consists in such acts or omissions on the part of the plaintiff amounting to a want of ordinary care, as concurring or co-operating with the negligent acts of the defendant, are a proximate cause or occasion of the injury complained of ( Beach Con. Neg., section 14); while assumption of the risk implies a contractual relation existing between the master and the servant, by which the latter enters the service of the former with full knowledge of the risks to which the performance of his duties expose him; in other words, that he knows the danger and runs the risk of being injured by reason thereof, and waives his right to an action against the master if injury results.   Beach on Con. Neg., section 15.

In the case of *Grand, Admx.,* v. *Michigan Central R. R. Co.,* 83 Mich. 564, where the latter question arose, the court, in speaking of the confusion in the cases, says: "We think confusion has sometimes crept into cases like this from the effort to determine them by the rules of contributory negligence.   We do not think they necessarily furnish the correct criterion for determination, but that the contract of employment is a necessary element of consideration.   It is an elemental principle that an employe when he enters into service, agrees to assume all risks ordinarily incident to his employment; and if he is of mature years, experienced in the business undertaken, and knows what instrumentalities are to be used by him, he contracts that he will assume the risks for using that class of instruments, as well as any other risks inci-

dent to the business, and if the master use proper care in providing the kind contemplated, the employe can not complain, although some other kind would have been less dangerous; his contract hushes his complaint, regardless of his negligence.''

The case of *Kane* v. *Northern Central R. W. Co.*, 128 U. S. 91, from which the majority opinion quotes at length, has not the least application to the questions involved in the case in hand.   In that case the only question involved was whether or not Kane was guilty of contributory negligence in using a defective ladder on one of the company's cars, the defect consisting of a missing step, which had been torn off some time before and which defect was not known to Kane until he discovered it while the train was going on its journey.

It is no new principle of law to hold that it is for a jury to determine whether or not a servant is guilty of contributory negligence, if, when suddenly called by the master to perform a duty, and on account of the emergency of the case and the necessity for immediate action he fails to discover the defects in the machinery furnished, although open and apparent.   I say this is no new principle of law, and while all of the authorities are not in accord as to when questions of that character should be submitted to a jury, it has no application whatever in this case.

But if the question of contributory negligence does arise, in any way, on the facts before us, we are called upon to decide whether they show that the appellee omitted to do something which he should have done, or did something which he should not have done.

Courts know, for it is a matter of such common knowledge that everybody knows, that a brake constructed as the one in controversy was constructed, was open to view in every part, and that the eyes of the appellee could not

be directed to the ratchet wheel without seeing the brake wheel. If, therefore, the appellee declared that he did not see the brake wheel, the conclusion would be inevitable that he was not looking at the ratchet wheel, hence the law says he would not allow his eyes to inform him of what was before him, and which he must have seen had he looked at all. If he was looking elsewhere, and his mind was not upon his work, the fault was his own.

The last question to which I desire to call attention is this: Is the appellant, The Baltimore and Ohio and Chicago Railway Co., liable in any event? That company owned the railroad upon which the appellee was injured, but it was not operating the train upon which appellee was working, neither was appellee in its employ. In his own testimony the appellee sets at rest all doubt upon this question, for he says he was in the employ of the appellant, The Baltimore and Ohio Railway Co., and braking on one of its freight trains.

This identical question, in a similar case, has been decided by the Supreme Court of this State against appellee. *Baltimore, etc., R. R. Co.* v. *Paul*, 40 N. E. Rep. 519.

For these reasons I think the judgment should be reversed.

Filed May 28, 1895.