## United States Cement Company *v.* Koch.

[No. 6,271. Filed July 2, 1908.]

1. Appeal.—*Transcript.—Seal.*—An appeal will not be dismissed because the authenticating clerk's seal was poorly indented. p. 253.

2. Same.—*Precipe.—Clerk's Certificate.*—Where a precipe calls for a "complete transcript" of the record, including the "original bill of exceptions containing the evidence," the attesting clerk's certificate to a transcript, showing that such transcript "contains full, true and correct copies, or the originals, of all papers and entries in such cause required by" such precipe, is sufficient. p. 253.

3. Same.—*Several Demurrer.—Exceptions.*—An entry to a ruling upon a separate demurrer to each paragraph of a complaint, stating that "the court overrules the demurrer to each paragraph of the amended complaint, to which ruling of the court the defendant at the time excepts as to each," will be considered as a separate exception. p. 254.

4. Pleading.—*Complaint.—Master and Servant.—Unsafe Place.—Explosions of Coal Dust.*—A complaint alleging that defendant negligently allowed coal dust to accumulate in a trench and pit in its factory, that plaintiff had no notice thereof, that defendant did have such notice, that a fire started in such coal dust in the conveyer at the bottom of one end of such trench, which fire plaintiff attempted to extinguish, and that such fire ignited the coal dust in such trench, thereby injuring plaintiff, fails to state a cause of action. p. 254.

5. Master and Servant.—*Line of Duty.—Saving Employer's Property.*—An employe who temporarily leaves his accustomed work in order to prevent the destruction of his master's property is not acting outside of the scope of his duty, it being the implied duty of an employe to exercise ordinary care for the preservation of the master's property. pp. 259, 260.

6. MASTER AND SERVANT.—*Assumption of Risk.*—At the common law the servant assumes all open and apparent risks of the service, whether necessarily incident to the service or otherwise. p. 259.

7. PLEADING.—*Complaint.—Master and Servant.—Duty.—How Alleged.*—A complaint by a servant against his master because of injuries received must allege facts showing (1) a duty by the master to protect the servant, (2) a failure to perform such duty, and (3) a proximately resulting injury. p. 260.

8. MASTER AND SERVANT.—*Safe Place.—Appliances.—Inspection.*—The master owes a duty to the servant to use reasonable care to provide for the servant a safe place in which to work, safe appliances with which to work, to keep such appliances in repair, and to make reasonably frequent inspections. p. 260.

9. SAME.—*Servant's Duty.*—Where the master has performed his duty in furnishing to the servant safe appliances, he is not liable for injuries sustained by such servant in the use thereof. p. 260.

10. SAME.—*Safe Place.—Dangers Arising from Ordinary Work.*—The master is not liable because of dangers arising from the use of proper appliances furnished, where he provides against probable and possible dangers that may arise, and provides for the servants the means of protecting themselves. p. 261.

11. SAME.—*Fellow Servants.—Test.*—Whether a corporation is liable to a servant injured by reason of some act which has not been performed is determined by ascertaining whether it is the duty of the officers of such corporation, or of some other servant, to perform such omitted act. p. 262.

12. PLEADING.—*Complaint.—Master and Servant.—Duties.*—A complaint for damages because of injuries received by plaintiff from an explosion of coal gas and coal dust in the factory wherein he was working, should show that it was neither his nor a fellow servant's duty to remove such dust. p. 262.

From Lawrence Circuit Court; *James B. Wilson*, Judge.

Action by William Koch against the United States Cement Company. From a judgment on a verdict for plaintiff for $7,500, defendant appeals. *Reversed.*

*Duncan & Batman, Elmer E. Stevenson* and *William H. Martin*, for appellant.

*Boruff & Boruff, Byron K. Elliott* and *William F. Elliott*, for appellee.

RABB, C. J.—The appellee sued appellant to recover damages for personal injuries alleged to have been caused by

the negligence of the appellant. The complaint was in seven paragraphs. Appellant demurred separately to each paragraph of the complaint. Its demurrer was overruled and exception reserved. Issues were formed, a trial had, resulting in a general verdict and judgment in favor of appellee. Among other errors assigned in this court and relied upon for reversal, is the overruling of appellant's demurrer to the complaint.

We are met at the threshhold of the case by appellee's contention that the transcript of the record is not properly before us, for the reason that it is not authenticated by the seal of the court, or a proper certificate from the clerk. An examination of the transcript discloses that the same is attested by the seal of the court. The impression is not made as distinctly as it should have been, but it is upon the certificate, and that it was not more carefully done is no fault of the appellant.

The appellant filed with the clerk the following precipe for a transcript: "William Koch v. United States Cement Company. The clerk will please prepare and certify a complete transcript of the record in the above-entitled cause for appeal to the Appellate Court of the State of Indiana. He is also requested to certify the original bill of exceptions containing the evidence, instead of a copy thereof." (Signed by the appellant's attorneys.) The clerk's certificate was as follows: "I, Boone Leonard, clerk of the Lawrence Circuit Court, within and for the State of Indiana, do certify that the above and foregoing transcript contains full, true and correct copies, or the originals, of all papers and entries in said cause required by the above and foregoing precipe." The certificate is attested by the clerk under the seal of the court. We think this certificate is in proper form, and that the attestation to the record is duly made.

It is further contended by appellee that no question is

presented upon the ruling of the court on the demurrer to the several paragraphs of the complaint, for the rea-

3. son that while the demurrer was to each paragraph separately, the exception was joint and not several. The form of the demurrer was as follows: "The defendant, the United States Cement Company, demurs separately to the first, second, third, fourth, fifth, sixth and seventh paragraphs of plaintiff's amended complaint, and for cause of demurrer as to each paragraph says that the same does not state facts sufficient to constitute a cause of action." The ruling of the court upon the demurrer and exception thereto was in the following language: "The court overrules the demurrer to each paragraph of the amended complaint, to which ruling of the court the defendant at the time excepts as to each." Appellee relies upon the following cases as supporting his contention: *Noonan* v. *Bell* (1902), 159 Ind. 329; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460. These cases have, however, been expressly overruled upon this point by the case of *Whitesell* v. *Strickler* (1907), 167 Ind. 602. The exception to the ruling of the court on the demurrer properly presents to this court the question of the sufficiency of each paragraph of the complaint.

The first paragraph of the complaint alleges that the appellant owns and operates a large cement plant in Lawrence county, in this State; that this plant consists of sev-

4. eral buildings connected by trenches, shafts, pulleys, conveyors and elevators, and that the different buildings contain engines, dynamos, rock crushers, mills for grinding coal, bins for holding the same, and other machinery; that the conveyors and elevators are used for transporting the ground and unfinished material to the different rooms and mills for treatment; that on February 21, 1905, appellee was at work for the appellant in one of the buildings, designated as the coal room, the place where coal was ground or crushed into fine powder, in what are described

as Griffin mills; that four of the mills were in the room where appellee was at work; that the coal was conveyed to these mills in large particles from coal-bins where it had been previously kiln-dried; that after the coal was ground it was carried from the mill through a shoot to a conveyor box, which is a half circular, sheet iron box surrounded by a wooden box, which conveyor box is built at the bottom of a trench located at the rear of the mills, and is about forty feet long, seven feet deep, and from two to three feet wide, with perpendicular sides, the bottom and walls of the trench being constructed of cement or concrete; that at the bottom of the trench, on the side next to the mills, is a screw conveyor, built over the half circular, sheet iron box, which is run by machinery, and extends the whole length of the trench, and is designed to convey the powdered coal from the mill to a receptacle or pit at each end of the trench, which is six or eight feet in length; that from these receptacles an elevator extends some forty feet high, consisting of an endless gum belt with cups attached, enclosed in a sheet iron case, which is run by machinery, and which conveys the dust from the receptacles to other and distant parts of the plant; that all of the machinery is run by electricity generated by a dynamo in said building; that, when the mills are in operation, the air in the room is so filled with coal dust that it darkens the room to such an extent that objects cannot be distinctly seen, especially in the trenches and pits; that at the time plaintiff was injured it was dark in said room, being 7:30 o'clock p. m. of said day; that this fine coal dust settled over the floor at the bottom of the trench, and into the pit or receptacle at the end of the trench, and where it so accumulates to any extent it is liable to ignite, explode and cause a fire, and therefore this coal dust should not be permitted to accumulate; that when plaintiff began work on February 21, 1905, he had not previously worked for the defendant for ten days, and was informed when he began work that all of said dust had been cleaned up at quitting

time on the day previous, and that there was no dust down in said trench or pit, but the defendant had negligently and knowingly permitted said fine coal dust to accumulate for several days in said trench, to a depth of several inches, and in the pits at the end of said trench to a depth of some three feet; that the accumulated dust was liable to explode and ignite, and it rendered the place dangerous and unsafe, of all of which facts the defendant at the time of the injury herein mentioned had full knowledge, or might have had by the exercise of reasonable care; that the plaintiff could not see said coal dust from where he worked, nor could he have known by the exercise of reasonable care, nor did he know of the existence of the same. The plaintiff alleges that about 7:30 o'clock in the evening of said day he noticed a blaze in the conveyor box at the bottom of the trench; that he went down into said trench to extinguish the blaze; that while he was down in said trench the coal dust which the defendant had carelessly and negligently permitted to accumulate, and the coal gas and dust in said trench, suddenly exploded, and the whole trench and pit became one blaze of fire, and that in consequence plaintiff suffered the injuries described in his complaint.

In all other paragraphs of the complaint the allegations are substantially the same, except that in the second it is alleged that the defendant carelessly and negligently constructed the conveyor box and spout out of pine lumber, so that it was liable to and did catch fire from the hot coal dust which came from the Griffin mills, and carelessly and negligently permitted the lid of the box to remain open and out of repair so the dust could get into the trench, and that the defendant carelessly and negligently constructed the spout which led from the conveyor box to the elevator shaft in such way that it did not fit against the boot of the shaft; that the spout was out of repair and had not fitted against the boot for several days; that the spout was also broken or split, all of which left an opening two or three

inches in width between the end of the spout and the shaft; that the boards on top of the spout were loose, and some of them removed therefrom, which defects permitted the coal dust to run out and accumulate in the pit, rendering the place unsafe and dangerous; that the defendant was negligent and careless in that it had built in the conveyor box wooden doors or slides which did not fit securely, and were partially open so that the coal dust fell into said pit or trench, of all of which facts, before set out, the defendant had full knowledge at the time of the injury mentioned herein, and the plaintiff did not know at the time of their existence.

The third paragraph varies from the first in that it alleges that the defendant was negligent in failing to provide a ladder to get out of the pit. The jury found against the appellee on the fourth paragraph of the complaint.

The fifth paragraph varies from the first in that it alleges that the defendant failed to furnish sufficient light in the coal room to enable plaintiff to see the condition of affairs, or to see the coal dust in the trench, and that on account of the failure of the defendant to supply such light the plaintiff was unable to see the condition of the coal dust in the pits.

The sixth paragraph varies from the first in that it avers that for some considerable time before the happening of the accident the plaintiff knew of the defect in the conveyor box and the elevator shaft, which permitted the coal dust to escape and fall into the pit or trench, and that he notified the defendant and its agents of the defect, and they promised immediately to repair the same and to fix the spout so that the dust could not pour out into the pit; that he was induced to go back to work by reason of said promise, but that the defendant did not keep its promise and repair the shaft and spout.

The seventh paragraph varies from the first in alleging

that the defendant failed to inspect the conveyor box, and that by reason of the defects in the conveyor box and spouts, which would have been observed had the defendant made proper inspection, the fine coal dust poured out of the crevices and openings in the defective spout and boxes into the trenches and pit, and made it liable to ignite and explode, and that it did ignite and explode and caused the plaintiff's injuries.

Each paragraph of the complaint avers as the proximate cause of appellee's injury the explosion of the coal dust in the trench and pit. Each avers the accumulation of dust on the floor of the trench and pit, and each avers appellee's ignorance of this condition. But each paragraph of the complaint affirmatively shows by facts directly alleged, or by necessary inference, that the conveyor in the trench, the elevator boot in the pit, and the spout leading from the conveyor to the boot, were all full of this same coal dust, and that the appellee at the time had notice of the fact, and that he not only knew that the conveyor, spout and boot were full of the dust, but that the dust in the conveyor was on fire, and with this knowledge entered the trench and pit. The danger to be apprehended came from the combination of coal dust and fire. The coal dust in the conveyor, spout and boot were of exactly the same nature as the coal dust on the floor. It could make no possible difference, so far as danger of injury from an explosion of the dust and consequent fire was concerned, whether the dust was in the conveyor and boot that were in the trench and pit, or on the floor of the trench and pit. The danger to one going in the pit and trench was the same from one as the other. Indeed, from the facts with reference to the construction and operation and situation of the machinery, it is apparent that the fine dust on the floor of the trench and pit could not explode and burn without involving all the dust in the trench, either on the floor or in the machinery. None of the paragraphs of the complaint aver directly either that the appellee

knew or did not know of the nature of the coal dust and its liability to ignite and explode, but the allegations are such that the inference naturally arises that he did know of such characteristics in the coal, and that knowing of this dangerous tendency of the dust he would not have ventured to go into the trench had he been aware of the coal dust accumulated on the floor. We are not willing to accept appellant's contention that an employe is outside the scope of his duty under his employment when he attempts to save his employer's building, in which the employe works, or his machinery with which he works, or with which his work is connected, from destruction by fire or anything else. We think it an implied duty an employe owes to his employer to exercise reasonable care to preserve from injury or destruction, the employer's property connected with the employment, and in efforts put forth to this end he is not a mere volunteer. But in all things done by the employe in such emergencies, and in discharging such extraordinarily implied duties, he is governed by the same rules that govern his duties, rights and liabilities in the discharge of the regular duties of his employment.

It is a well-established rule governing the relation of master and servant that the servant assumes all risks and hazards of the service that are open and apparent to him, whether they are necessarily incident to the service or otherwise. *Myers* v. *W. C. De Pauw Co.* (1894), 138 Ind. 590; *Bedford Belt R. Co.* v. *Brown* (1895), 142 Ind. 659; *Wabash R. Co.* v. *Ray* (1899), 152 Ind. 392; *Pennsylvania Co.* v. *Ebaugh* (1899), 152 Ind. 531; *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673; *Salem-Bedford Stone Co.* v. *Hobbs* (1894), 11 Ind. App. 27; *Ames* v. *Lake Shore, etc., R. Co.* (1893), 135 Ind. 363, and cases cited; *Muncie Pulp Co.* v. *Jones* (1894), 11 Ind. App. 110; *Standard Oil Co.* v. *Fordeck* (1904), 34 Ind. App. 181; *Baltimore, etc., R. Co.* v. *Leathers* (1895), 12 Ind. App. 544; *Peerless Stone Co.* v. *Wray* (1895), 143 Ind. 574; 1 Bailey,

Personal Injuries, §§639-642; Wharton, Negligence (2d ed.), §214.

This rule applies to the services which the complaint shows appellee was undertaking to render the master in this case, and it is apparent that the hazards of the employe's undertaking were perfectly open to him when he entered the trench. He knew the coal dust was there, and he knew it was on fire, and knowing these facts he assumed the risk of the explosion and consequent injury which followed. There is this further objection to the first and seventh paragraphs of the complaint.

In an action by an employe against his employer for negligence resulting in injury to the employe, the complaint must, by direct averment, state facts showing (1) a duty by the master to the servant to protect him from the injury of which he complains; (2) a failure by the master to perform that duty; (3) a proximately resulting injury. *Faris* v. *Hoberg* (1893), 134 Ind. 269, 39 Am. St. 261; *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558; *Indiana, etc., Coal Co.* v. *Neal* (1906), 166 Ind. 458; *South Bend, etc., Plow Co.* v. *Cissne* (1905), 35 Ind. App. 373.

The master owes a duty to the servant to exercise reasonable care to furnish him a safe place in which to work, safe appliances to work with, to exercise reasonable diligence to keep them safe and in repair, which duty includes that of making reasonably frequent inspections.. *Faris* v. *Hoberg, supra;* 1 Labatt, Master and Serv., §6.

The first paragraph of the complaint undertakes to set up a violation of the master's duty to furnish a safe place in which to work. The facts averred as establishing such breach of duty are that, "when the mills are in operation, the air in the room is filled with coal dust which settles over the floor at the bottom of the trench and into the pit at the end of the trench, and when it accumulates to any extent is liable to ignite and cause a fire, and

should not be permitted to accumulate,  *  *  *  but that
defendant negligently permitted the coal dust to accumu-
late until it was several inches deep in the trenches, and
three feet deep in the pit, and that this accumulation of
dust rendered the place dangerous." While it is the duty
of the master to furnish a safe place in which to work, and
safe machinery to work with, it is the duty of the servant to
use the place and machinery carefully, and if injury re-
sults to the servant from the operation of the machinery no
liability attaches to the master. It appears from the alle-
gations of the complaint that it was the operation of the
machinery in the plant that generated the danger. The
place furnished by the master was safe until by the opera-
tion of the plant it was rendered dangerous, and to keep it
safe it was essential that the coal dust should be kept cleaned
up off of the floor of the trench and pit, and this is the
thing it is charged the master neglected to do.

When the place furnished by the master to the servant in
which to work is safe as it stands when the work begins,
and the danger can only arise as the work progresses,
and is caused by the work done, it is not the duty
of the employer to stand by during the progress of
the work to see when the danger arises. It is sufficient if he
provides against such dangers as may possibly and probably
arise, and gives the workmen the means of self-protection.
*Durst* v. *Carnegie Steel Co.* (1896), 173 Pa. St. 162, 33
Atl. 1102; *Cleveland, etc., R. Co.* v. *Brown* (1893), 73 Fed.
970, 20 C. C. A. 147; *Baird* v. *Reilly* (1899), 92 Fed. 884,
35 C. C. A. 78; *O'Connell* v. *Clark* (1897), 48 N. Y. Supp.
74, 22 Hun, App. Div., 466; *Petaja* v. *Aurora Iron Min.
Co.* (1895), 106 Mich. 463, 64 N. W. 335, 66 N. W. 951, 32
L. R. A. 435, 58 Am. St. 505; *St. Louis, etc., R. Co.* v. *Need-
ham* (1894), 63 Fed. 107, 11 C. C. A. 56, 25 L. R. A. 833;
2 Labatt, Master and Serv., §588.

It cannot reasonably be claimed that it was the duty of
the president and directors or the general officers of this

company to go into this trench, with scoop and broom, and clean up the coal dust as it settled there from the operation of the plant. This was work which would necessarily be done by some employe of the company.

The paragraphs of the complaint under consideration, while they allege that appellee was at work for appellant in the coal room, utterly fail to state what the duties of his employment were. It may well be that it was a part of the duties of his employment to do this very work which he claims the master neglected to perform. This paragraph of the complaint is clearly bad for failure to show that the negligent act complained of was a duty owing by the master to the appellee. Clearly the appellee could not recover if the work of keeping the floor of the pit and trench free from accumulation of coal dust was a duty either of the appellee himself, or a fellow servant engaged in the same line of employment.

The seventh paragraph of the complaint proceeds upon the theory that the appellant was guilty of negligence in permitting coal dust to accumulate in the trench and pit, and its neglect to make proper inspection, all of which duties must necessarily have been performed by an employe, and for anything appearing in the complaint it may have been the duty of the appellee himself to perform both the work of keeping the pit and trench clear of the dust, as hereinbefore stated, and also to make the inspection of the premises to see that they were free from dust.

Cause reversed, with instructions to the court below to sustain appellant's demurrer to each paragraph of the complaint.

Roby, J., absent.