# WRIGHT, ADMINISTRATRIX, *v.* CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY.

[No. 6,992. Filed May 23, 1911.]

1. TRIAL.— *Peremptory Instruction.— When Proper.—* Where the plaintiff's evidence wholly fails to establish or to tend to establish a material allegation of the complaint, a peremptory instruction for the defendant is proper. p. 677.

2. MASTER AND SERVANT.— *Negligence.— Duty.— Violation.— Want of Evidence.—Peremptory Instruction.—*In an action by the personal representative of a servant against his master for negligence causing such servant's death, a peremptory instruction for defendant is proper where there is no evidence tending to prove a duty on the part of defendant, a failure to perform that duty, or that such failure resulted in decedent's death. p. 677.

3. MASTER AND SERVANT.—*Railroads.—Switching Cars.—Evidence. —Peremptory Instructions.—*In an action for the death of a brakeman, evidence that he was employed as a member of a switching crew in defendant railroad company's yard, that the switching was done under the direction of a yard foreman, that the decedent coupled a cut of cars to the engine which switched them to another track, that on such other track stood four cars at a short distance from the train which was being made up, that the engineer saw the decedent start toward the rear end of such four cars, that the engineer backed his engine and attached cars against the cut of four cars, thereby pushing them against the train which was being made up, and killing decedent, does not tend to show any negligence on the part of defendant, and a peremptory instruction was properly given. p. 678.

4. MASTER AND SERVANT.— *Assumption of Risk.— Railroads.—* A railroad company is not required to notify brakemen of the obvious dangers to which they are constantly subjected, but is liable where the dangers are not within the ordinary risks of the employment. p. 680.

5. MASTER AND SERVANT.— *Railroads.— Brakemen.— Dangers.— Knowledge of Engineer.—*Where an engineer knows or should

know of a brakeman's danger between the cars he is required to stop his engine, and a failure so to do renders the company liable for resulting injuries.   p. 681.

From Superior Court of Tippecanoe County; *Henry H. Vinton,* Judge.

Action by Martha Wright, as administratrix of the estate of Perry M. Wright, deceased, against the Chicago, Indianapolis and Louisville Railway Company.   From a judgment for defendant, plaintiff appeals.   *Affirmed.*

*Charles E. Thompson* and *Wilson & Quinn,* for appellant.

*E. C. Field, H. R. Kurrie* and *John F. McHugh,* for appellee.

MYERS, J.—Appellant brought this action against appellee to recover damages on account of the alleged negligent killing of her decedent, Perry M. Wright.   Issues were formed and submitted to a jury for trial.   At the close of appellant's evidence, on motion of appellee, the court, over appellant's objection, instructed the jury to return a verdict in its favor.   Appellant's motion for a new trial was overruled, and judgment rendered in accordance with the jury's verdict.   The sustaining of appellee's motion peremptorily to instruct the jury, and the overruling of appellant's motion for a new trial are each assigned as error.   The only question for decision relates to the giving of said instruction.

The complaint is in two paragraphs.   In the first it is shown, in substance, that appellee at the city of LaFayette maintained a switch yard, composed of ten switch tracks, all connected at the south end by a lead track; that decedent, at the time of his death, was a member of a certain switching crew, and under his employment with appellee his work consisted in coupling and uncoupling cars in said switch yard under the direction of the yard foreman, who was a member of said crew; that at the time of and imme-

diately before the accident decedent was assisting in making up a certain train on track No. 1, by uncoupling cars on the various switch tracks and coupling them up again on track No. 1. At the direction of said foreman, decedent uncoupled a cut of five or six cars from a number then standing on track No. 3, and immediately returned to the south end of the cars standing on track No. 1, and began to examine the coupling-pin, draw-bar, knuckle and coupling device on the south car, to see if they were in good condition for service, as was his duty to do under his employment; that while so engaged in this work, which required his whole attention, and required him to occupy a position with his back to the south, the engineer in charge of the switch engine coupled onto said cut of five or six cars, and moved them south along the lead track, past the south end of track No. 1. Then, in obedience to a signal given by said yard foreman, the head brakeman opened the switch leading onto track No. 1, and thereupon said cut of cars and engine were switched over onto said track, and said engineer, in obedience to a signal from said foreman to proceed with the cars, ran them at a high and dangerous rate of speed toward and against the standing cars; that the engineer and said foreman knew at the time said cut of cars was being pushed along said track No. 1 that it was a part of decedent's work to examine and inspect the couplers and other mechanical devices composing them, before coupling them together, and that the decedent was at the time engaged in this work, which required him to be on track No. 1 and between the rails. The foreman at the time of giving said signal, as well as the engineer, was on the east side of track No. 1, which track was straight and unobstructed, and the engineer could, by looking, have seen along the track to a point far beyond the place occupied by decedent, but after said cut of cars was switched over onto track No. 1 decedent could not be seen by said engineer, although said engineer could see along the side of

said track far beyond the place where decedent was killed, and could and did see that decedent was not in sight at the. time he was running the cars along track No. 1; that all of said cars were equipped with automatic couplers, which, when properly adjusted and arranged for that purpose, and when the cars were of equal height, would couple by impact. The acts of negligence charged are as follows: (1) That the engineer, knowing that decedent was between the rails, and at the south end of the standing cars, negligently and carelessly pushed the cut of cars, taken from track No. 3, toward and against decedent at a high and dangerous rate of speed, to wit, more than seven miles an hour; (2) that said engineer, knowing that said decedent was between the rails of track No. 1, and engaged in the performance of his duties, carelessly and negligently shoved said cut of cars up and against said stationary cars, without receiving a signal from decedent so to do; (3) that the yard foreman, knowing of decedent's position on the track, and the dangerous rate of speed at which the cars were approaching him, carelessly and negligently failed to signal the engineer to stop or slacken the speed of said cars and engine; (4) that the yard foreman, knowing decedent's dangerous position on the track, carelessly and negligently, and without any signals from decedent, signaled the engineer to run the cars attached to said engine against the standing cars, and that decedent was thereby killed; (5) that the yard foreman, knowing the high and dangerous rate of speed at which the cars were approaching decedent, and knowing the dangerous position of decedent in the performance of his duties, carelessly and negligently failed to give him any warning of the approaching cars. The second paragraph is the same as the first, except that the engineer only is charged with negligence.

From the briefs filed in this case, it would seem that the court gave the instruction, of which complaint is made,

upon the theory that the evidence failed to show any negligence on the part of the remaining members of the train crew which proximately contributed to the accident.

Plaintiff was entitled to a submission of the question to the jury, unless, after considering all the evidence and resolving all doubts and inferences to be legitimately drawn therefrom in her favor, it could be said that there was no evidence to establish one or more facts essential to her cause of action, in which event the instruction was correct. *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413; *Pittsburgh, etc., R. Co.* v. *Cozatt* (1907), 39 Ind. App. 682; *Baltimore, etc., R. Co.* v. *Spaulding* (1898), 21 Ind. App. 323; *Cooper* v. *Merchants, etc., Bank* (1900), 25 Ind. App. 341. We are not unmindful of the rule that it is not a question as to the weight of the evidence, for if there was any evidence, however conflicting, tending to prove the material allegations of appellant's complaint, it would be error to direct a verdict. *Messick* v. *Midland R. Co.* (1891), 128 Ind. 81; *Green* v. *Eden* (1900), 24 Ind. App. 583. But this case is no exception to the rule requiring the plaintiff to allege and prove not only the existence of a duty on the part of the defendant to protect decedent from the particular injury causing his death, but that it failed to perform that duty, and that such failure resulted in his injury and death. For, not until there is some evidence before the jury tending to prove each of these facts can it be said that actionable negligence has been established. *Faris* v. *Hoberg* (1893), 134 Ind. 269, 39 Am. St. 261; *United States Cement Co.* v. *Koch* (1908), 42 Ind. App. 251; *City of LaFayette* v. *West* (1909), 43 Ind. App. 325; *Town of Boswell* v. *Wakley* (1897), 149 Ind. 64; *Indiana, etc., Coal Co.* v. *Neal* (1906), 166 Ind. 458; *Chicago, etc., R. Co.* v. *Lain* (1908), 170 Ind. 84.

We have carefully read and considered all of the evi-

dence as it appears in the record, and find that it is practically without any conflict. A general statement of the case, as taken from the evidence, shows that on September 5, 1905, at about 10 o'clock in the morning of a clear day, appellant's decedent was caught between the bumpers on a standing car and one of a cut of cars, pushed by a switch engine up against the standing car for the purpose of being coupled thereto, and was killed. At the time of the accident decedent was in the employ of appellee, and a member of one of its switching crews at work in its switch yard in LaFayette. This switch yard was composed of ten parallel switch tracks, running north and south, all connected on the south by a lead track running northeast and southwest. The switch tracks were numbered from one on the west to ten on the east. Track No. 1 is the track upon which trains are made up, and holds sixty to seventy cars of an average length of about thirty-six feet. The switching crew consisted of a yard foreman, who was in charge of the work, an engineer, a fireman, a head brakeman, who remained with the switch engine, and the decedent, who was the field man. The yard foreman gave orders, and directed the other members of the crew as to the particular work they were to do. The switch yard was in charge of a general yard master, who furnished the yard foreman with the list of cars which were to compose the train being made up on track No. 1. This track at the middle is higher than the other tracks, and slopes gradually to the north and south until it reaches a level with the other tracks. The work of decedent was to couple and uncouple cars. The switch engine was in charge of the engineer. After several cars had been placed upon track No. 1, and coupled by decedent, the crew proceeded to track No. 3, where a cut of six cars was detached by decedent from a number of others standing on that track. The cars so detached, and by the head brakeman coupled onto the switch engine, were pulled to the lead

track, and down to the south end of track No. 1, and switched onto that track. At the signal of the foreman and head brakeman they were pushed north on track No. 1, until they came in contact with a cut of four cars; then all were pushed north until they struck standing cars, which were a part of the train. The head brakeman while moving the cars rode on the footboard in front of the engine, and when the cars collided the second time he uncoupled the engine, and it moved south down track No. 1 to the lead track. The cut of cars failed to couple with the made up part of the train, and as the engine moved away they started south, when the foreman climbed up on the south end and set the brakes, stopping them at a point about sixty feet from the standing cars. The foreman then went to the lead track, and with the engine to track No. 5, where cars were added to complete the train. The yard master about this time discovered that Wright had been killed, and notified the rest of the crew. When the cut of cars was taken from track No. 3, Wright was present, and about the time they started north on track No. 1 he proceeded south, and around the cars standing on track No. 2, to track No. 1, and then north between track No. 1 and track No. 2, to the point where these cars came in contact with the cut of four cars, and the first coupling was to be made. The last time the engineer saw decedent alive was when he went between the cars to make one of the two couplings. There was no evidence that the foreman or the engineer knew that Wright was in a dangerous position between the cars where he was killed. There was no evidence that the foreman or the engineer knew, or by the exercise of reasonable care should have known, that Wright was between the bumpers, or in a dangerous position, with respect to the moving cars, at the time he was killed. No one saw him there. It is in evidence that decedent went north with the moving cut of cars for the purpose of coupling them to the cars standing on the track, and that he was killed at the point where the

second coupling was to be made. There is no evidence that the bumper or coupler on the car where the accident happened was in any manner out of order. There was no evidence from which it can be said that either the foreman or the engineer, by the exercise of reasonable care, should have known or expected that the decedent was on the track at the time the cars collided the last time. There was no evidence of any noise from other engines or cars moving in that vicinity at the time of the accident. There was no evidence that the foreman was in a position to warn decedent of the danger, and thereby prevent the accident. The evidence would not warrant the inference that the cars which caused the accident were run at a greater rate of speed than was usual or customary in making up trains. There was no evidence showing that the foreman or the engineer was not where he should have been in the performance of his work at the time of and before the accident happened, nor was there any evidence tending to show that the train was not being made up in the usual and customary way of making up trains in that yard. The decedent was an experienced brakeman. He knew that the cars on track No. 1 were being moved to the north, and for what purpose. He was engaged at his regular employment, that of coupling the cars as they were pushed together. There is no claim that he did not fully understand and realize the hazards of the work in which he was engaged, or that the danger was not open and obvious. It is not the duty of the master to follow an experienced servant through the various details of the work he is employed to perform, and warn him of open and obvious dangers. *Staldter* v. *City of Huntington* (1899), 153 Ind. 354; *United States Cement Co.* v. *Koch, supra,* at page 261. But the master does engage that he will not expose his servant to dangers not reasonably and fairly incident to and within the ordinary risks of the servant's employment. *Jenney Electric, etc., Co.* v. *Murphy* (1888),

115 Ind. 566; *Guedelhofer* v. *Ernsting* (1899), 23 Ind. App. 188. Consequently, in the case at bar, if there was any evidence from which it could be inferred that the engineer or the foreman knew, or by ordinary care should have known, that Wright was in the position and engaged as alleged in the complaint, then appellee owed him the duty of stopping the cars before they reached him, or of warning him of the danger in time for him to make good his escape, and if, from a neglect of that duty, injury happened, appellee would be liable.

After a careful consideration of this record, we must conclude that neither the engineer nor the foreman was in any manner to blame for decedent's death. They were certainly unaware that decedent was exposed to any danger, or that the continued moving of the cars north would probably result in any accident or injury to decedent. The evidence fails to establish actionable negligence on the part of the appellee. For that reason the court did not commit error in directing a verdict.

Judgment affirmed.