CASE 13—PETITION ORDINARY—MARCH 8.

# Cincinnati, &c. R. Co. v. Sampson's Admr.

### APPEAL FROM BOYLE CIRCUIT COURT.

| 97 | 65 |
|----|----|
| 103 | 478 |
| 97 | 65 |
| f 104 | 778 |
| 97 | 65 |
| 105 | 466 |
| 97 | 65 |
| 112 | 436 |
| 97 | 65 |
| f135 | 258 |

1. RAILROADS—OVERHEAD BRIDGES—WILFUL NEGLECT AS TO BRAKEMAN.—A railroad company is guilty of wilful neglect in having an overhead bridge on its road under which brakemen on the top of freight trains can not pass without the exercise of more than ordinary care. And even though a bridge may be of such a height as to enable an ordinarily prudent brakeman to remain on top of the car when nothing intervenes to divert his attention from the necessity of stooping in order to pass through safely, still the company is guilty of wilful negligence as to a brakeman who by reason of some emergency which requires prompt action as his train approaches the bridge fails to discover his danger and is killed by coming in contact with the bridge.

2. SAME—EVIDENCE AS TO ALTERATION OF BRIDGE AFTER ACCIDENT.— The defendant was not prejudiced by the action of the court in admitting testimony to the effect that the bridge had been raised by defendant since the accident, it being shown by the testi-

Vol. 97.--5.

mony for defendant that the bridge was too low for a brakeman
to pass under without stooping.

3. SAME.—The court properly instructed the jury that they should find
for plaintiff if they believed from the evidence the bridge was not
high enough to allow brakemen to pass under it "while in the
discharge of their duties with reasonable safety to their persons
while standing or walking on top of a freight train." It is not
necessary to determine whether plaintiff would have the right to
complain of a qualification of this instruction to the effect that
the jury must find for defendant if they believe that the decedent
knew the bridge was insufficient in height to enable him to pass
under it.

4. CONTRIBUTORY NEGLIGENCE.—The court properly refused an in-
struction as to contributory negligence.

5. MEASURE OF DAMAGES.—The court properly told the jury that the
criterion of damages was the power of the decedent to earn
money had he lived, not exceeding the amount claimed.

6. EVIDENCE AS TO SIZE OF DECEDENT'S FAMILY.—The defendant was
not prejudiced by the testimony of the widow that she had one
child, as this condition of the decedent's family was not made an
element of damage in any instruction to the jury.

C. B. SIMRALL FOR APPELLANT.

1. In the absence of proof supporting the allegations of want of
knowledge upon the part of Sampson, and knowledge upon the
part of the railroad, the defendant was entitled, upon the close of
plaintiff's case, to a peremptory instruction. (Bogenschutz v.
Smith, 84 Ky., 330; 2 Thompson on Negligence, p. 1008.)

2. Defendant was also entitled to a peremptory instruction upon the
ground that the injury alleged in plaintiff's petition as a ground
of recovery arose from a risk assumed by plaintiff's decedent
in the line of his employment. (Patterson on Railway Accident
Law, 308; Pierce on Railways, p. 380.)

Brakemen and other employes who enter the employment of
the company with a knowledge of the height of a bridge assume
the risk of injury therefrom as a part of the danger of employ-
ment. (Owens v. N. Y. Cent. R. Co., 1 Lans. (N. Y.), 108.)

And such risks are also assumed where the employe remains
in the service of the company after he has acquired knowledge,
or ought to have acquired knowledge, of its dangerous condition;
and he will be charged with knowledge if he has been accustomed
to pass beneath it so frequently that ordinary observation ought
to have made him acquainted with the manner of its construction.
(Goff, Adm'r v. Norfolk, &c., R. Co., 36 Fed. Rep., 299; Corbine's
Adm'r v. Benn. & Rut. R. Co. (Vt.), 38 Am. & Eng. R. Cases, 45;
Hooper v. Columbia R. Co., 28 Am. & Eng. R. Cases, 433; B. & O.
R. Co. v. Stricker, 41 Md., 47; Pittsburgh, &c., R. Co. v. Santmeyer,

92 Pa. St. 276; Wells v. Bur., C. R. & N. R. Co., 56 Iowa, 520; Clark's Adm'r v. R. & D. R. Co., 18 Am. & Eng. Ry. Cases, 78; Gibson v. Erie R. Co., 63 N. Y., 449; Raines v. St. Louis, &c., R. Co., 71 Mo., 164; Baylor v. D., L. & N. N. R. Co., 40 N. J. Law, 23; Gibson v. Midland R. Co., 2 Ontario, 653; Brossman v. Lehigh Valley R. Co., 113 Pa. St., 490; Hughes v. Cincinnati, &c., R. Co., 91 Ky., 526; Nance's Adm'r v. Newport News, &c., R. Co., 13 Ky. Law Rep., 554; Derby's Adm'r v. Ky. Cent. R. Co., 9 Ky. Law Rep., 153.)

3. Sec. 3 chap. 57, of the Gen. Stats., regulated the right of recovery. (Wright v. Wood's Adm'r, 27 S. W. Rep., 979; McClure v. Alexander, 24 S. W. Rep., 619.)

   Therefore, there could be no recovery except for wilful negligence, which was not shown. (L. & N. R. Co. v. McKay, 81 Ky., 413; Claxton's Adm'r v. L. & B. S. R. Co., 13 Bush, 636; City of Lexington v. Lewis' Heirs, 10 Bush, 680; Jacob's Adm'r v. L. & N. R. Co., 10 Bush, 263.)

4. One entering the employment of another assumes all the risks and hazards ordinarily incidental to the duties of his employment, and the court erred in refusing to so instruct the jury. (Cooley on Torts, 541, note 1; Wood on Master and Servant, sec. 626; Bailey's Master's Liability for Injury to Servant, 152; Pierce on Railways, 379; Patterson's Railway Accident Law, 343; Gibson v. New York, &c., R. Co., 63 N. Y., 449; B. & O. R. Co., v. State, 41 Md., 268; Bogenschutz v. Smith, 84 Ky., 336; L. C. & L. R. Co., v. Caven's Adm'r, 9 Bush, 568; L. & N. R. Co. v. Brooks, 83 Ky., 135; Sullivan's Adm'r v. Louisville Bridge Co., 9 Bush, 88.)

   This court has applied this principle to employes working on the top of freight cars and in danger of being struck by overhead bridges. (Hughes v. Cincinnati, &c., R. Co., 91 Ky., 526; Nance's Adm'r v. Newport News, &c., Co., 13 Ky. Law Rep., 554; Derby's Adm'r v. Ky. Cent. R. Co., 9 Ky. Law Rep., 153.)

5. The court erred in refusing an instruction to the effect that if the jury believed that the negligence of Sampson was the proximate cause of his injury the jury must find for defendant. (M. & St. P. R. Co. v. Kellogg, 94 U. S., 469; 2 Thompson on Negligence, 1151; Shearman & Redfield on Negligence, sec. 10.)

6. The instruction given was erroneous. It absolutely condemns the bridge at which Sampson was killed and takes from the jury the consideration of the question as to whether it was negligence to maintain the bridge as constructed.

7. The court erred in admitting testimony as to the change in the bridge since the accident. (Columbia & Puget Sound R. Co. v. Hawthorne, 144 U. S., 202; Standard Oil Co. v. Tierney, 92 Ky., 368.)

   Additional cases cited upon this point in petition for rehearing:

Nalley v. Hartford Carpet Co., 51 Conn., 524; Baird v. Daily, 68 N. Y., 547; Dugan v. Champlain Transportation Co., 56 N. Y., 8; Ely v. Ry. Co., 77 Mo., 34; Crouch v. Watson Coal Co., 46 Iowa, 18; Hudson v. C. & N. W. Ry., 59 Iowa, 581; Long v. Sanger, 44 N. W. Rep., 1095.

J. W. YERKES of counsel on same side.

ROBERT HARDING for appellee.

1. It was the duty of appellant to have constructed and maintained the bridge of a sufficient height from its roadbed to have enabled brakemen to stand erect upon the cars ordinarily in use upon its road while in the discharge of their duty to it, and to pass under this bridge in safety. (Derby's Adm'r v. Ky. Cent. R. Co., 9 Ky. Law Rep.,153; St. Louis R. Co. v. Irvin, 1 Am. St. Rep., 266; Beach on Contributory Negligence, sec. 134.)

It is the duty of the master not to expose the servant, when conducting the master's business, to perils and hazards against which he may be guarded by proper diligence on the part of the master. (Hough v. Railway Co., 100 U. S., 216; Chicago, &c., R. Co., v. Sweet, 45 Ill., 197; Ill. Cent. R. Co. v. Welch, 2 Ill., 183; Chicago, &c., R. Co. v. Russell, 91 Ill., 289; 2 Thompson on Negligence, p. 1012.)

2. The failure upon appellant's part to construct this bridge of a sufficient height to enable brakemen to pass under it in safety was wilful negligence against which contributory negligence can not be pleaded as a defense. (Derby's Adm'r v. Ky. Cent. R. Co., 9 Ky. Law Rep., 153.)

3. The testimony as to the raising of the bridge was competent for the purpose of showing that appellant was controlling and maintaining this bridge.

ROBERT J. BRECKINRIDGE and J. W. RAWLINGS of counsel on same side.

CHIEF JUSTICE PRYOR delivered the opinion of the court.

The personal representative of James R. Sampson brings this action to recover for the loss of life of his intestate, alleging he was killed by coming in contact with an overhead bridge constructed by the appellant, the Cincinnati, New Orleans & Texas Pacific Railway Company, on its road, while he was in its employ as a brakeman, and in the discharge of

a duty he owed the company by reason of that employment.

The basis of the recovery is the alleged wilful neglect of the appellant in the construction and maintenance of its bridge, in such a manner as rendered it more than ordinarily hazardous to its employes, who were acting as brakemen. The appellee's intestate had been in the employ of the company on this part of its road but a short time before his death, about one month, but had much experience as a brakeman, having been in the employ of railroad corporations since he was twelve years old, but seems to have been on this part of the appellant's road but a short time.

The train upon which the intestate was killed was going south and composed of twenty-six cars; it was on a downgrade as it approached the bridge, and running at a speed of fourteen or fifteen miles an hour, and when within a half mile of the bridge the pin used in coupling the cars came out, when the train divided, leaving the intestate on the one section and other employes upon the other. The intestate was in the cab at the time, but instantly left, climbing from the cab to the box cars, and going to the rear end of the first section and, as we must assume, to signal those on the second section, as was his duty, so as to prevent a collision. It is conceded that this was his duty, and in the attempt to discharge it he met with the misfortune that ended his life. The back of his head and his shoulders were horribly mangled, and the evidence of his coming in contact with the bridge causing his death is conclusive. His back must have been toward the bridge with his face fronting the section behind, and from the effort to discharge his duty, connected with the alleged negligence of the appellant, his death is said to have resulted.

The pleadings make up the issue, as to the knowledge of the condition of the bridge on the part of the company, and

the want of knowledge on the part of appellee's intestate, and if wilful neglect is established, the judgment below will not be disturbed. There is some evidence conducing to show that the bed of the railroad had been raised since its original construction, which would lessen the distance from the rails below to the bridge above, but when that was done does not distinctly appear, and it being conceded in argument, and it appearing from the testimony of appellant's own witnesses, that this bridge was too low for brakemen to pass under it standing erect, without the loss of life, or subjecting their person to great peril, we will consider this case upon the character of its construction as appellant concedes it to have been when this accident happened, and the peril in which the intestate was required to place himself in the discharge of a duty imposed upon him by his employer.

Railroads, as this court has heretofore said, are not insurers of the lives or safety of their employes, but must provide reasonably safe appliances for their safety, and if the bridge causing this accident was of such a height as enabled its employes to pass under it by the exercise of only ordinary care on their part, a case of wilful neglect has not been made out by the testimony, and a non-suit should have been directed by the trial court.

It is contended that this bridge has been constructed for many years, and no employe having been injured or killed by reason of its construction, it must be assumed that it is such a structure as is reasonably safe for its employes. We can not adopt this view of counsel, but on the contrary, it is plain from the record before us that this overhead structure was in no such condition as enabled this employe to discharge the duty he owed the company, and at the same time, however careful, protect himself from the danger impending by reason of the unsafe condition of the bridge. The

employe assumes the ordinary risks pertaining to an employment that is often and necessarily attended with much danger, but this does not exempt the railroad company from liability when reasonable precaution on its part would save its employes from harm, and in a case like this where the exercise of the slightest care would have prevented the accident. There can be and has been no reason assigned in this case why a corporation with the means to construct a railway would in the construction of small or large bridges, leave them in such a condition as involves its employes, brakemen, in imminent peril when passing through them, when with a small expenditure such structures in this regard could be made perfectly safe. We are aware of many reported cases, some of which have been referred to by counsel, where the absence of ordinary care and the means of knowing the condition of the bridge by the employe have been held as relieving the railway company from responsibility in such cases. This court, however, has not followed or approved those decisions in reference to such structures, but on the contrary in the case of Derby's Admr. v. The Kentucky Central Railroad Company, 9 Ky. Law Rep., 153, plainly intimated that if the intestate in that case had been required to be on top of the car as it passed through the structure in discharge of his duty, and was killed by reason of its being too low for the cars to pass under, the brakeman standing erect upon them, a recovery would have followed. In that case the jury by their verdict said the structure was sufficiently high to enable one standing erect on the cars ordinarily used by the company to pass through safely, and the judgment for the defendant was affirmed, not only on the ground that the intestate knew the car he was on was too high for him to stand upon, but for the additional reason that he was master of the train, and had made it up, placing

in the train this high car that belonged to another road.

Mr. Beach in his work on Contributory Negligence, 364, says: "If the roof or overhead structure of the bridge is so low that it will strike a brakeman standing erect on top of the train it is an essentially murderous contrivance, and it is not creditable to our jurisprudence that such buildings are not declared a nuisance. There is nothing in the reports worse than the cases that sustain the railway corporations in building or maintaining these man-traps." See also St. Louis &c. R. Co. v. Irwin, 37 Kan., 701. In the case of Wright, on the appeal of the Louisville, New Albany & Chicago Railway reported in 115 Ind., 378, a like accident happened to the brakeman, and on the trial of that case (an action for damages) it appeared that Wright had been in the employ of the company about one month, and had passed through the bridge several times. Still the jury under proper instructions returned a special finding to the effect he had no knowledge of the perilous condition of the structure, and the court upon the motion for a new trial sustained the verdict. The only difference between that case and the one being considered is that in this case the intestate had more experience with reference to railroading than Wright, the right of recovery in either case depending upon the fact whether the overhead structure was in such a condition as enabled the employe to perform his duties with reasonable safety. The jury have by their verdict said the intestate was ignorant of the condition of the structure, and while his own version of the accident went to the grave with him, the facts and circumstances connected with his death were such as authorized the jury to say that his efforts to check the broken train indicated a belief on his part that the structure was of sufficient height to enable him to pass in safety. The structure may have been in such a condition as to en-

able an ordinarily prudent brakeman to remain on top of the car when nothing intervened to divert his attention from the necessity of stooping in order to pass through safely, but when by reason of the separation of the train, or some other unexpected obstruction to the movement of the train, as it approached the structure, that required prompt and speedy action on the part of the brakeman to save the lives of passengers or the collision of one part of the train with the other, can it be said under such circumstances that that bridge is reasonably safe to the employe discharging such duties, when by the slightest care and precaution on the part of the company, the employe can be protected when undertaking such hazardous risks? It is plain to us this brakeman could not have discharged the duty imposed upon him that resulted in his death by the exercise of ordinary care and thus saved his life, or that such a risk as he was required to take upon himself when killed, with reference to the location of this bridge, was such as is usually incidental to the employment.

The court in Derby's Admr. v. Kentucky Central Railroad Company, 9 Ky. Law Rep. 156, before cited, in reference to the argument that railroad companies should be required to construct their bridges and make up their trains so as not to expose the person of the brakeman to danger, said that a consideration of humanity should prompt them to do so, and it seems to us a failure in that regard is the highest degree of negligence.

In the case of the Chicago &c. R. Co. v. Johnson, 116 Ill., 206, the court said: "When a railroad company constructs a covered bridge along the line of its road it should be built of sufficient height so that persons employed by the railroad company as brakemen and who are required to go on top of the freight cars discharging their duties as brake-

men, while going through a bridge, may pass through and under it without danger to their personal safety, and the law does not require of a brakeman that he should absolutely know all the defects of construction, and all the obstructions that may be along the line of the road."

We can perceive no distinction between a covered bridge and one without a top, save in the former, obstructions may be concealed on the inside not visible to the brakeman, but the court in that case was discussing the necessity of having the structure of sufficient height to enable the employes to pass over it with reasonable safety, and certainly of such height as to enable the brakeman to save himself from harm when duty to his employer requires him to take extraordinary risks for the preservation of life and property. The facts of this case come up to the full meaning of the term, "wilful neglect," as defined by this court. They manifest what is equivalent to intentional wrong, and a recklessness evidencing the absence of all care for the safety and protection of its brakemen.

During the progress of the trial witnesses examined for the defense as well as those for the plaintiff were asked the question: "Has not the bridge been raised higher since the accident?" The answer was: "Yes, about eighteen inches or two feet." Objections and exceptions were properly made and taken for the reason that such testimony would authorize the inference that this was an admission of the negligence. The objection might be available if it was not shown by the testimony for the appellant, and from the undisputed facts, that the structure was too low for a brakeman to pass through without stooping, as upon this fact, combined with the circumstances attending the loss of life, the recovery must depend.

Several instructions were offered by the defense and re-

fused. These instructions embraced the law of contributory neglect, the care the employe must take for his own safety, and the duty of the company to provide reasonably safe appliances for the protection of its employes. If a recovery is proper in this case the instructions should have been refused, and in our opinion the two instructions given by the court embodied the law.

"The court instructs the jury it was the duty of the defendant in the construction and maintenance of this overhead bridge where decedent was killed, to so construct and maintain it, as to the height thereof, that its brakemen on top of the trains could pass under it while engaged in the discharge of their duties, with reasonable safety to their persons, while standing or walking on it, and if you believe from the evidence in this case the bridge was not so constructed and maintained as to the defendant as to the height thereof, and by reason thereof decedent was killed, you shall find for the plaintiff, unless you believe from the evidence that decedent knew the said bridge was insufficient in height to enable him to pass under it with safety while on it, or that he recklessly and with indifference to the consequences exposed himself to the danger, in which latter state of case you will find for the defendant."

The second instruction was as to the measure of damages, "the criterion of which was the power to earn money had he lived, not exceeding the amount claimed."

The instruction given in regard to negligence is based on such facts as would authorize the court to say to the jury as a matter of law that if the bridge was not of sufficient height to enable the brakeman to pass with reasonable safety the company was guilty of wilful neglect, and under the former decisions of this court it was doubted by Justice Lewis in his dissent in Derby's Admr. v. The Kentucky Central Rail-

road, whether if guilty of wilful neglect the issue of knowl-
edge or want of knowledge on the part of the decedent as
to the danger of the structure should have gone to the jury.
The jury, however, passed on the question in this case and
rendered a verdict for the plaintiff.

The widow was introduced as a witness and stated she
had one child. This condition of his family was not made
an element of damage in any instruction, and no reversal
should be had on that ground.

The judgment below is affirmed.