## BALTIMORE AND OHIO RAILROAD COMPANY *v.* KEISER.

[No. 6,886.  Filed March 9, 1911.  Rehearing denied June 29, 1911.
Transfer denied June 26, 1912.]

1. APPEAL.—*Briefs.*—*Statement of Evidence.*—*Rules of Court.*—
Where sixteen witnesses testified, and in appellant's brief only
three of them are mentioned and the evidence, embracing 248
pages of the record, is condensed to nine pages and omits any
reference to the testimony of numerous witnesses on important
matters in issue, there is no substantial compliance with the
requirements of the rules of the Supreme and Appellate courts
with reference to setting out the evidence in appellant's brief.
p. 64.

2. APPEAL.—*Briefs.*—*Questions Reviewable.*—*Instructions.*—Where
appellant's brief does not comply with the court rules with ref-
erence to setting out the evidence, and it is necessary to deter-
mine whether the instructions given were applicable to the evi-
dence, the court is not required to pass on them, except to decide
whether they were proper in view of any evidence that might
have been given under the issues.  p. 65.

3. MASTER AND SERVANT.—*Injury to Servant.*—*Complaint.*—*Suffi-
ciency.*—In an action by a railroad brakeman for injuries by
falling through an open bridge in the track near a station while
he was on the ground examining the air-brakes while the train
was in motion, the averments of the complaint that on account
of the negligence of the engineer in failing to observe the usual
customs in giving the signal to start the train from the station
and in moving and stopping the train, the brakeman believed
that the train had passed the opening, and left the train and
proceeded along the track examining the air-brakes and releas-
ing air-brakes in the train, and while so doing fell into the open-
ing and was injured, are sufficient to show an exception to the
rule denying recovery to a servant who has previous knowledge
of the dangers complained of and which are incident to his
employment.  p. 65.

4. MASTER AND SERVANT.—*Injury to Servant.—Assumption of Risk.
—Question for Jury.*—Where a servant is shown to have been surrounded at the time of injury by extraordinary circumstances, not of his own making, in which attention is diverted from the danger by a great and important duty to his master which he is required to discharge, it becomes a question for the jury to determine whether the risk was or was not assumed. p. 65.

5. MASTER AND SERVANT.—*Injury to Servant.—Verdict.—Answers to Interrogatories.*—In an action by a brakeman for injuries received in falling through an open bridge in the track while at work in the discharge of his duties, answers to interrogatories by the jury showing that he believed that the train was beyond the opening, that he used the roadway along the track to release air-brakes, that his attention was diverted from the danger of the opening by the duty of his employment, that he continued to run along the train in the performance of his duty of releasing air-brakes and that while so doing he fell into the opening, that he was at the time acting in a reasonably prudent manner, that he could not see the opening and did not then have his mind on the opening, are not in conflict with a general verdict for plaintiff. pp. 67, 70.

6. TRIAL.—*Verdict.—Answers to Interrogatories.*—A general verdict finds every material fact essential to a recovery, and judgment cannot be rendered on answers to interrogatories unless they are in irreconcilable conflict with the general verdict. p. 70.

7. TRIAL.—*Verdict.—Answers to Interrogatories.—Conflicting Answers.*—Where answers to interrogatories are inconsistent or in conflict with each other, they cancel and nullify each other and have no effect on the general verdict. p. 70.

8. MASTER AND SERVANT.—*Injury to Servant.—Duty of Master.—Construction of Railroad Bridge.—Negligence.*—Although a railroad bridge constructed and maintained in a rural district, according to an approved plan, may be conclusive under ordinary circumstances in favor of the railroad company on the question of negligence, where a bridge is constructed in the same way in a switchyard or at a station where employes of the company necessarily pass over and near the same, not only the construction and maintenance of the bridge, but its location, use and the handling of the company's business, and the operation of its trains in the immediate vicinity, must be considered in determining the question of negligence in the manner of its construction and maintenance. p. 70.

9. MASTER AND SERVANT.—*Injury to Servant.—Negligence.—Construction of Railroad Bridge.*—In an action by a railroad brakeman for injuries in falling through an open bridge while in the

discharge of his duty in running along the train to release air-brakes, where it was established that the bridge was 2400 feet west of the signal tower at the crossing where the telegraph station was situated, and 2000 feet west of the station, that a pumping house was 3100 feet west of the tower and 700 feet west of the bridge, that the water tank was 3700 feet west of the tower and 1300 feet west of the bridge, it cannot be said as a matter of law that defendant was free from negligence in maintaining such open bridge although it may have been of an approved plan in general use. p. 71.

10. NEGLIGENCE.—*Question for Jury.*—Although the court will declare negligence as a matter of law where the facts are undisputed, where the facts are controverted and reasonable minds may draw different conclusions, the question is for the jury. p. 71.

11. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—Where an instruction, otherwise correct, assumes the proof of a fact about which there is no controversy, or one proved by undisputed evidence, its giving is not reversible error. p. 72.

12. EVIDENCE. — *Preponderance.* — *Weight.* — *Instructions.*—An instruction telling the jury that the preponderance of the evidence does not depend on the number of witnesses, but on the weight of the testimony, and that the plaintiff cannot recover if the evidence is equally balanced, but that he must have the preponderance in his favor, is a correct statement of the law. p. 72.

13. APPEAL.—*Review.*—*Incomplete Instruction.*—*Failure to Tender Complete Instruction.*—An instruction, which, though incomplete, is correct as far as it goes, cannot be attacked on appeal, where appellant failed to tender a more complete instruction. p. 73.

14. RAILROADS.—*Maintenance.*—*Construction of Tracks.*—*Duty.*— A railroad company must keep its tracks and grounds in a safe and suitable condition for the purposes for which they are used, and where switching is done and trains are made up, and the employes are constantly exposed to dangers, a greater degree of care is required than at points where such duties are rare. p. 73.

15. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—Where the instructions given on the whole state the law fully and correctly as applied to the facts, technical errors and omissions, if any, in particular instructions are harmless. p. 77.

16. APPEAL.—*Review.*—*Finding.*—*Judgment.*—*Evidence.*—The finding and judgment on issues properly submitted to the jury, will not be disturbed on appeal, where there was evidence tending to sustain the same. p. 77.

From Starke Circuit Court; *John C. Nye,* Judge.

Action by Frank M. Keiser against the Baltimore and Ohio Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Miller, Shirley & Miller,* for appellant.

*Kelly & Pentecost* and *H. A. Steis,* for appellee.

FELT, J.—An appeal from the Starke Circuit Court from a judgment of $2,000, for personal injuries, in favor of appellee and against appellant.

The errors assigned are: Overruling the separate demurrers to the first, second and third paragraphs of complaint, overruling the motion for judgment on the interrogatories, notwithstanding the general verdict, and overruling the motion for a new trial.

The first paragraph of complaint alleges, in substance, that appellant owned and operated a railroad through the village of McCool, in Porter county, Indiana; that it maintained a water-tank a short distance from said town, and operated a double track through the town, between which tracks there was a path for the use of its employes while engaged in the discharge of their duties, and especially for the use of brakemen in going alongside trains to examine cars and to inspect and release air-brakes; that appellant negligently constructed its roadbed near said town by leaving an opening near the water-tank, about four feet in width and twenty feet deep from the surface of the roadbed, and negligently failed in any way to guard or to cover the same, or to warn persons using such path of the danger incident thereto; that said roadbed was so constructed and maintained with full knowledge that the space between the tracks was of necessity used by appellant's employes as a path in discharging their duties to the Company; that said path extended between said tracks on either side of said opening, which was caused by a highway passing under said railroad tracks; that on February 3, 1905, appellee was in the employ of appellant as a freight

brakeman; that his duty required him to keep constant look
over the train, to obey all orders of the conductor, to give
signals, to look after air-brakes, and see that they were in
proper working order, and if found not to be, to go along-
side the train and release the air by pulling a rod attached
to the cars for that purpose; that on said date appellee was
engaged in the discharge of his duties in the caboose of said
train, which was managed by other employes of appellant,
including engineer, conductor, fireman and other brakemen;
that said train stopped at McCool to take water, and after
so doing, the engineer carelessly and negligently started said
train and moved it for some distance, and then caused it
to stop momentarily, and then again moved it for some dis-
tance, and then momentarily stopped it again, and then care-
lessly and negligently blew the whistle and gave signals to
start, which signals were the usual signals for departing
from the station; that it was the usual and customary prac-
tice of the engineer to sound the whistle for leaving the sta-
tion only after the caboose of the freight-train was over,
across and beyond the opening in the roadbed over said
bridge; that on account of the negligence of the engineer in
giving the signals and sounding the whistle for the depart-
ure from said station, and because of the previous moving
and stopping of the train, appellee was thereby, and on ac-
count of the general custom of so starting trains at that
place, informed and led to believe that the caboose, in which
he was working, had passed said opening, and that he was
safe and free from danger if required to leave the train for
any purpose; that immediately after the engineer signaled to
leave the station and the train started, appellee discovered
that some of the air-brakes were not working, and it was nec-
essary for him, in the discharge of his duties, to leave the
caboose and use the path to go alongside the cars, and release
the air-brakes by pulling said release rods; that immediately
on discovering the failure of the air-brakes to work, he left

the caboose, taking with him a lantern, and proceeded alongside the train, over said path between the tracks, while the train was moving at a rate of speed of about four miles an hour, to a car on which the air-brakes had failed to work; that while in the act of looking under the car and getting hold of the rod to release the air-brake, not knowing the opening to be at that place, he came suddenly to said opening in the roadbed, which, from the signals given by the engineer, he believed the train had passed, and was suddenly and violently thrown into said opening, and fell to the roadway below, a distance of twenty feet, on the frozen ground, and was severely injured; that the accident occurred about 2 o'clock in the morning, when the weather was severely cold.

The second paragraph is substantially the same as the first, except that it alleges that appellant carelessly and negligently constructed and maintained its roadbed, by leaving said opening near the water-tank uncovered, and without guards or signals or anything to show at night the danger in using said path, and did so with full knowledge that the space between the ends of the ties was of necessity used by its employes as a path while in the discharge of their duties at that place.

The third paragraph of complaint is substantially the same as the first, except the following averments: "That while in the performance of his said work in attempting to release the air-brakes his mind was entirely absorbed in the doing of said work, so that he did not know and was not able to know at that time the particular place where he was with reference to the opening in the roadbed; that he was required to act promptly and hurriedly in the attempt to release the air-brake immediately upon the discovery that the same was not working properly and he says that in response to such immediate demand, in the hurriedness of his work, and that because of the fact that the work which he was do-

ing demanded and required of him his full care and attention the plaintiff says, he was not able to know, or see and did not know the precise place where said opening in the roadbed was and did not see said opening with reference to the time his doing the work herein mentioned, and that said footway between the two tracks was the only available space for him to perform the work herein alleged that he did perform.''

Appellee insists that appellant has not complied with the rules of this court in the preparation of its brief, and that no question is presented for decision, but, on application, permission was granted to file an amended brief, which appellant has done, and in which it has set out the demurrers. The amended brief shows a substantial compliance with the rules of this court, except in the failure to set out a condensed statement of the evidence in narrative form.

The record shows that sixteen witnesses testified, and appellant has mentioned only three of them, but has given a statement of the evidence under three subheads, viz: "The Place of the Accident", "The Plaintiff", and "The Accident". There are 248 pages of the evidence in the record, which appellant has condensed into nine pages in its amended brief. While terseness is to be commended, the absence from the condensed statements of the evidence of any reference to the testimony of numerous witnesses on important and vital matters in issue, makes it impossible to say that there has been such substantial compliance with the rules in this regard as the decisions of this court and the Supreme Court require. *Welch* v. *State, ex rel.* (1905), 164 Ind. 104, 108, 72 N. E. 1043; *Indiana, etc., R. Co.* v. *Ditto* (1902), 158 Ind. 669, 672, 64 N. E. 222.

Where necessary to consider instructions, and determine whether under the evidence they are applicable, the court in this situation is not required to pass on them, except to

decide whether proper, considering any evidence that might be given under the issues as formed. *Welch* v. *State, ex rel., supra; Fifth Ave. Sav. Bank* v. *Cooper* (1898), 19 Ind. App. 13, 17, 48 N. E. 236; *Hilker* v. *Kelley* (1892), 130 Ind. 356, 30 N. E. 304, 15 L. R. A. 622.

The objection urged to each paragraph of the complaint is that there is no averment that appellee was ignorant of the conditions which are alleged to constitute the negligence of appellant in the construction and maintenance of the bridge where appellee was injured, and the further objection that no negligence is shown.

The theory of each paragraph of the complaint is that the facts alleged show an exception to the general rule denying recovery to a servant who has previous knowledge of the dangers complained of, and which are incident to his employment.

There are cases, where the danger is obvious, in which it cannot be ruled, as a matter of law, that an employe assumes the risk. If the facts averred show appellee to be surrounded by extraordinary circumstances, not of his own making, in which his attention is diverted from the danger by a great and important duty to his master, which he is required to discharge, it then becomes a question for the jury to say whether, under all the circumstances shown by the evidence, the risk was or was not assumed.

The averments of each paragraph of the complaint are sufficient on this theory to state a cause of action, and there was no error in overruling the separate demurrers. 4 Thompson, Negligence §§4731-4752; *Baltimore, etc., R. Co.* v. *Leathers* (1895), 12 Ind. App. 544, 40 N. E. 1094; *Wallace* v. *Central Vt. R. Co.* (1893), 138 N. Y. 302, 33 N. E. 1069; *Williams* v. *St. Louis, etc., R. Co.* (1893), 119 Mo. 316, 24 S. W. 782; *Maue* v. *Erie R. Co.* (1910), 198 N. Y. 221, 91 N. E. 629; *Strong* v. *Iowa Cent. R. Co.* (1895), 94

Iowa 380, 62 N. W. 799; *Chicago, etc., R. Co.* v. *Johnson* (1886), 116 Ill. 206, 4 N. E. 381.

In *Baltimore, etc., R. Co.* v. *Leathers, supra,* on page 549, this court said: ''The general rule is, that when machinery and appliances are so placed and constructed that the danger is open and obvious the servant assumes the risk. He is bound to make use of his senses, and if he proceed to work when he knew or could have known of the danger by using his senses, he will be deemed to have accepted the risk. But there is a class of cases where the danger is obvious in which the assumption of the risk can not be ruled as a matter of law, but is a question for the jury. If a servant be surrounded by extraordinary circumstances not of his own making, or if his attention be diverted from the danger by great or more important duties to his master, it is a question for the jury to say whether or not he assumed the risk.''

In *Wallace* v. *Central Vt. R. Co., supra,* the court considered a case where a brakeman, while in the discharge of his duties on the top of a moving train, was hit by a low bridge and injured. He brought an action against his employer for damages, and the trial court nonsuited him, but the judgment was reversed.

The court in that case, among other things, said: ''At the time of the accident there were fifty-four cars in the train, and there were two brakemen assigned to duty upon the train. It was the duty of the plaintiff to be on top of the cars, ready to respond to calls for brakes, and to keep watch over the train to see that it did not part and run together. * * * The plaintiff had been in the employment of the defendant for several weeks at the time of the accident, and had daily passed over the road under the bridge, and had thus made about thirty-one trips over the road. He must have known of the existence of the bridge, and must repeatedly have noticed it. When he passed under the bridge at prior times he may have been facing it, and may thus have

avoided the danger, or he may have been sitting down on top of the cars, and thus been out of reach of the bridge. At the time of the accident he was upon a very long train, intent upon the discharge of his duty, with his face toward the rear of the train, in a position to most effectually discharge his duty, and thus his back was toward the bridge. He was not at the time aware that he was approaching a place of danger, and had no warning of the bridge. Indeed, the bridge was not in his mind, and the trial judge non-suited him because he did not at the time have the bridge in his mind and thus guard himself against the danger of injury. We do not think that one thus situated can, as a matter of law, be charged with negligence because he did not take notice of the fact that he was approaching the bridge, and thus know that he was in a place of danger. He was in a place where there was danger that the train might break in two, and he was intent upon the discharge of his duty. It cannot be said that a brakeman is, as a matter of law, careless because he does not bear constantly in mind the precise location where the train is and where every bridge is. * * * But a brakeman on the top of a moving train cannot always be expected to know when he is approaching a low bridge. His duties may require his attention to the rear of his train, away from the place of danger, and he cannot be expected to bear constantly in mind and to know where the train is, or where a bridge is.''

The fourth assignment of error is based on the refusal of the court to render judgment in favor of appellant on the answers to the interrogatories returned with the general verdict.

The facts on which appellant relies are based on answers to interrogatories showing that at the time of the injury appellee was engaged in trying to release the air-brake, and did not have in mind the opening of the bridge; that he had passed over this bridge and the

roadway repeatedly during two years of service prior to the accident, and had lived at McCool prior to his employment as brakeman, and knew the location of the tracks, the road-bed, station building, signal-tower, pump-house, water-tank, switch-targets and bridge of the appellant, at and near the town of McCool; that appellant's road crosses another rail-road at McCool, and runs practically east and west through the town; that at this railroad crossing is located a signal tower in which there is a telegraph office, from which the trainmen receive orders; that going west from this signal tower there are the following: Station building, 400 feet west; derailing device, 600 feet west; a switch-target, 1,300 feet west; a bridge over a public highway, where appellee fell and was injured, 2,400 feet west; a pump-house, 3,100 feet west; other switch-targets, 3,400 feet west, and the water-tank, 3,700 feet west; that appellee knew the sounding of two blasts of the locomotive whistle meant that the train was to leave the station but did not signify leaving from any par-ticular point; that when not otherwise engaged, appellee was to occupy the rear car, and when an emergency arose he was to act immediately without waiting for signals or instruc-tions; that appellee did not immediately before he alighted from the train look at the surroundings to ascertain the loca-tion of the train, and believed at that time that the caboose was between the signal-tower on the east and the water-tank on the west; that the train was going east; that he knew the bridge in question was not planked between the tracks; that the surface of the roadway between the double tracks of appellant's road at McCool, immediately on either side of the opening at the bridge, was used by brakemen as a path in going about the trains in the discharge of their duties, and was so used on February 3, 1905; that it was the usual way used by employes of the company at and before the time of the accident; that said path at the time was not a reason-ably safe place for appellee to engage in the work required

of him; that he was engaged in the discharge of his duties immediately before he fell; that it was the duty of appellee when he discovered that air-brakes were not working properly, to proceed promptly to release them; that his attention was diverted from the danger of the opening of the bridge across the highway by the more important duty of releasing the air-brakes, while said cars were in motion; that on discovering that the brakes were not working, he promptly alighted from the caboose, and ran east alongside the train, going in the same direction, and released the brakes on the two cars in front of the caboose and reached the third one, pulled the rod intended to be used for releasing the brakes, and the same did not work; that he continued to run alongside the cars with his lantern in one hand and the other hand working on the rod to release the brake, and ascertain the particular difficulty that prevented the release of the brake; that while so engaged he came to the bridge, and fell and was injured; that appellee in leaving the caboose and undertaking to release the air-brakes at the time and just before his injury, acted in a reasonably prudent manner; that while so engaged in trying to release the air-brakes on the third car from the caboose, he could not see the opening in the bridge in time to avoid falling, and did not then have in mind the opening of the bridge; that at the time he started from the caboose with his lantern to release the brakes, because of the previous movements of the train, and because of the signals given by the sounding of the whistle by the engineer, he believed he was beyond and east of the opening in the bridge into which he fell; that the opening in the bridge between the tracks was about two feet eight inches in width, and seventeen feet long, and no danger-signals were maintained at either side of the opening.

The general verdict finds every fact essential to a recovery, and judgment can not be rendered on the interrogatories, unless the facts established by the answer thereto are

in irreconcilable conflict with the general verdict. *Second Nat. Bank* v. *Gibboney* (1909), 43 Ind. App. 492, 87 N. E. 1064; *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583, 66 N. E. 454; *Albany Land Co.* v. *Rickel* (1904), 162 Ind. 222, 228, 70 N. E. 158.

If the answers to interrogatories are inconsistent or in conflict with each other, they cancel and nullify each other, and have no effect on the general verdict. *Louisville, etc., Traction Co.* v. *Worrell* (1909), 44 Ind. App. 480, 86 N. E. 78; *South Shore Gas, etc., Co.* v. *Ambre* (1909), 44 Ind. App. 435, 87 N. E. 246.

In this case, the answers to the interrogatories support rather than contradict the general verdict, and are not in irreconcilable conflict therewith.

The principal reason assigned by appellant for judgment on the interrogatories is that the answers show that appellee had no right to rely on the whistle signals in the starting and moving of the train, and that he knew the conditions and surroundings immediately before and at the time of his injury, and therefore assumed the risk.

In the case of *Indiana, etc., R. Co.* v. *Bundy* (1899), 152 Ind. 590, 53 N. E. 175, cited by appellant, it was said that the court cannot say as a matter of law that a recovery may not be had where the servant knew the method of operating the interlocking switches and knew the location of the one where his injury occurred, or that the employe was bound, on such general knowledge, to know the particular ground occupied by the wires which caused his injury; that because of such general knowledge, the servant could not be held to have the particular knowledge, "without stripping him of all protection afforded by ordinary, prudent and cautious protection."

A bridge constructed and maintained in a rural district, according to an approved plan in general use, doubtless would be conclusive under ordinary circumstances in favor

of the railway company on the question of negligence, but the same bridge constructed in the same way in a switch yard or at a station, where employes of the company would necessarily pass over or near the same, may not, as a matter of law, be sufficient to relieve the company from the charge of negligence where an injury results from its open and unguarded condition. A bridge of approved construction in general use does not exclude the idea of its location and particular use in determining the question of negligence.

9. In this case, the evidence and the answers to the interrogatories show that the bridge in question was 2,400 feet west of the signal-tower at the railroad crossing, where the telegraph station was situated, and 2,000 feet west of the station; that a pumping-house was 3,100 feet west of the tower and 700 feet west of the bridge; that the water-tank was 3,700 feet west of the tower, or 1,300 feet west of the bridge.

On these facts we hold that it cannot be ruled as a matter of law that appellant was free from negligence in constructing and maintaining the bridge at this particular point in the manner shown. Not only the construction and maintenance of the bridge, but its location, use and the handling of the company's business, and the operation of its trains in the immediate vicinity, by its employes, must be considered in determining the negligence or freedom from negligence of appellant in so maintaining the bridge, with the unguarded and uncovered opening between the tracks.

The court will declare negligence as a matter of law where the facts are undisputed, but where the facts are controverted, and reasonable minds may draw different conclusions, the question is for the jury, and in this case the question was properly submitted to the jury. *Cleveland, etc., R. Co.* v. *Haas* (1905), 35 Ind. App. 626, 636, 74 N. E. 1003; *Baltimore, etc., R. Co.* v. *Leathers* (1895), 12 Ind. App. 544, 549, 40 N. E. 1094; *Baltimore, etc., R. Co.* v

*Roberts* (1903), 161 Ind. 1, 67 N. E. 530; 4 Thompson, Negligence §§4731-4752; *Libby, McNeil & Libby v. Banks* (1904), 209 Ill. 109, 70 N. E. 599; *Baltimore, etc., R. Co. v. Slaughter* (1906), 167 Ind. 330, 341, 79 N. E. 186, 7 L. R. A. (N. S.) 597, 119 Am. St. 503.

Errors arising on the motion for a new trial, as far as presented by appellant's brief, are that (1) the verdict is not sustained by sufficient evidence and is contrary to law; (2) the court erred in giving and in refusing to give certain instructions.

Objection to instruction one, given by the court of its own motion, is that it limits the questions at issue to the subject of negligence. An examination of this instruction shows that the objection is purely technical, and the error, if any, harmless; for it has been held that to give an instruction otherwise correct, which assumes the proof of a fact about which there is no controversy, or one proved by undisputed evidence, is not reversible error. These rules are applicable here, for there was no attempt to disprove, or question, the happening of the accident and the injury to appellee, and these facts are the basis of the objections urged. *Braxton v. State* (1901), 157 Ind. 213, 61 N. E. 195; *Hawkins v. State* (1894), 136 Ind. 630, 36 N. E. 419; *Chicago, etc., R. Co. v. Spilker* (1893), 134 Ind. 380, 401, 33 N. E. 280, 34 N. E. 218; *Louisville, etc., R. Co. v. Utz* (1892), 133 Ind. 265, 32 N. E. 881; *Hunt v. Conner* (1901), 26 Ind. App. 41, 59 N. E. 50.

Number three, given by the court, told the jury that the preponderance of evidence does not depend on the number of witnesses, but on the weight of the testimony, and that plaintiff could not recover if the evidence was equally balanced, but he must have the preponderance in his favor to entitle him to a recovery. The instruction is somewhat verbose, but states the law correctly, if the language is fairly interpreted. The same is true of instruc-

tion four, given by the court of its own motion. It does not undertake to enumerate the facts essential to a recovery, but calls attention to facts that may be considered in determining appellee's care or want of care. If incomplete, as the objection urges, a more complete instruction should have been tendered by appellant, in order to save any question, for the instruction was correct as far as it went, and was applicable to the evidence. *Malott* v. *Shimer* (1899), 153 Ind. 35, 54 N. E. 101, 74 Am. St. 278; *Cromer* v. *State* (1899); 21 Ind. App. 502, 52 N. E. 239.

Instruction four and one-half, given by the court on its own motion, and nine, asked by appellant and refused, may be considered together.

Instruction nine asked the court to instruct the jury that as a matter of law, if the company "constructed and maintained the bridge in question in a fashion generally approved and adopted by first class railroads," it was not negligent in so constructing and maintaining the same. Four and one-half calls attention to the allegations of the complaint charging negligence in leaving the open space between the tracks at the bridge uncovered, and to the claim of appellant that the bridge was of approved construction in general use, and told the jury that if it found from the evidence that such was the fact, the question whether the bridge and path between the tracks were reasonably safe, was to be determined by them, not alone from the construction and maintenance of the bridge, but from all the evidence bearing on the subject of its location, and the particular use of the bridge and the company's adjacent premises, including the evidence showing its construction and maintenance and the general use, of similar bridges.

These instructions present the controlling question in this case. The instruction refused, states a proposition of law that is well recognized, and in many cases applicable. Instruction four and one-half proceeds on the theory that

it cannot be declared as a matter of law that approved construction in general use will in every case preclude the idea of negligence on the part of the railway company.

In this case, it is contended that, owing to the situation and use of the bridge over the highway where appellee fell and was injured, the question of negligence because of the failure to guard or to cover .the open space between the tracks with some suitable bridging, and in so maintaining the same, was one of fact, to be determined by the jury not alone on the question of what was approved construction in general use, but, in connection with such fact, the location, necessary use by employes, and all the facts and circumstances in relation thereto disclosed by the evidence.

On the facts of this case we think the latter theory correct. In *Indiana, etc., R. Co.* v. *Bundy, supra,* cited by appellant, where an instruction, in regard to wires connected with an interlocking switch, similar to said instruction nine was tendered, the same was refused, and the court clearly shows that the care required in providing a safe place for employes to work necessarily varies with the conditions, and that it must at all times be in proportion to the danger, and cannot in every case where the question of approved construction is involved, be made to depend wholly on that question.

In *Williams* v. *St. Louis, etc., R. Co., supra,* 322, the court said: "The duty of a railroad company in respect to keeping its tracks and grounds in a safe and suitable condition, must be a relative one, dependent upon the purposes for which they are used, and the duties required of employes upon them. In yards where trains are made up and much switching done, and in which switchmen are constantly exposed to dangers, a greater degree of care is required than at points on the road where such duties are rare. The duty of the master should be measured and determined by the uses to which premises are applied." To the same effect are

the following authorities: *Baltimore, etc., R. Co.* v. *Leathers, supra;* 13 Decennial Digest, "Master and Servant" §112; *Choctaw, etc., R. Co.* v. *Stroble* (1906), 80 Ark. 68, 96 S. W. 116; *Louisville, etc., R. Co.* v. *Wright* (1888), 115 Ind. 378, 16 N. E. 145, 17 N. E. 584, 7 Am. St. 432; 4 Thompson, Negligence §§4753, 4361, 3773, 3986; *Barnett & Record Co.* v. *Schlapka* (1904), 208 Ill. 426, 70 N. E. 343; *Cincinnati, etc., R. Co.* v. *Sampson's Admr.* (1895), 97 Ky. 65, 30 S. W. 12; *Maher* v. *Boston, etc., R. Co.* (1893), 158 Mass. 36, 32 N. E. 950; *Strong* v. *Iowa Cent. R. Co.* (1895), 94 Iowa 380, 62 N. W. 799; *Shadford* v. *Ann Arbor St. R. Co.* (1899), 121 Mich 224, 80 N. W. 30; *Kalker* v. *Hedden* (1905), 72 N. J. L. 239, 61 Atl. 395; *Chicago Edison Co.* v. *Moren* (1900), 185 Ill. 571, 57 N. E. 773; *Dolphin* v. *Plumley* (1896), 167 Mass. 167, 45 N. E. 87.

In the case at bar, the proposition is more than a simple question of the construction of a bridge, for the danger incident to an opening between its tracks at the bridge over a highway is involved, which on the facts distinguishes this from many cases cited by appellant.

Appellant has cited the case of *Maue* v. *Erie R. Co., supra,* to show that the company was not negligent in maintaining the bridge in the manner shown. There was a dissenting opinion in the case, but it was decided on the theory that the bridge was over a highway at a farm crossing in a rural district. The court said: "The case, as now presented, turns wholly upon the question whether the defendant was negligent in maintaining this farm crossing without a deck or cover." The bridge was shown to be two miles from a town, which was the usual place of inspecting, and the employe was injured while inspecting the cars near the bridge. The court fully recognized that a different rule applies where employes in discharging their duties make frequent use of the premises, and said: "It would be as unjust to hold that railroad corporations should be required to antici-

pate every possible emergency that may arise in the progress of trains as to absolve them from responsibility for the unnecessary maintenance of dangerous conditions at particular places where brakemen, in the regular inspection of trains, are subjected to perils which can be obviated by the exercise of reasonable care and prudence.'' The court in that case ordered a new trial, and did not as a matter of law hold that there could be no recovery. The facts are sufficiently different from those in the case at bar to readily distinguish it.

Appellant complains of instructions two and five, given by the court at the request of the appellee. These instructions are unnecessarily long. Instruction two told the jury, in substance, that in determining whether appellant was negligent in maintaining the bridge, as alleged, it should consider its plan, construction, whether approved and in general use, its maintenance, its location, the use of the bridge and the roadbed on either side thereof by its employes, the necessity and feasibility of such use in managing and operating its trains, and informed the jury that from all the facts, including the fact of approved construction and general use, it should determine whether it was negligence so to maintain the bridge as shown by the evidence. Instruction five told the jury that as a general rule the servant assumed the hazards incident to his employment, and then informed it that in determining whether the appellee in this case assumed the risk, it might consider the evidence tending to show that his mind was so absorbed in the discharge of an important duty to his master, in an emergency, as to relieve him from the assumption of the risk, and that, from all the evidence bearing on that question, it should determine whether he did or did not assume the risk in the particular instance under investigation.

Complaint is also made of the refusal to give instruction ten, requested by appellant. The substance of this instruction was included in other instructions given.

The instructions are unnecessarily long, and, considered separately, show some omissions, technical errors and minor inaccuracies, but when all those given and refused are read, as we have done, those given are found to state the law fully and, on the whole, correctly as applied to the facts of the case, and the errors, if any, could not have possibly misled or influenced the jury, and are harmless.

The point is made that the case depends on concurrent and interdependent acts of negligence, and that there is a failure to prove the alleged negligence in sounding the whistle and in the movements of the train. Notwithstanding the omission of the evidence from the briefs, we have read most of it from the record, and find that there is testimony tending to establish these facts, and from which the jury may have found them.

The case is one where the parties differ radically in their theories. Numerous cases are cited to show that appellant was not negligent on the facts shown by the evidence, and that appellee assumed the risk. These cases are distinguishable from the one at bar, and are not in conflict with the authority herein cited or our holding in this case. The theory and the facts are different, and the rules there applied are not applicable here. The questions at issue were properly submitted to the jury, and there is evidence tending to sustain the finding and judgment.

No available error is shown by the record.

Judgment affirmed.

NOTE.—Reported in 94 N. E. 330. See, also, under (1) 2 Cyc. 1013; (2) 3 Cyc. 169; (3) 26 Cyc. 1397; (4) 26 Cyc. 1478; (5) 26 Cyc. 1514; (6) 38 Cyc. 1926; (8) 26 Cyc. 1129; (9) 26 Cyc. 1463; (10) 29 Cyc. 634; (11) 38 Cyc. 1809; (12) 17 Cyc. 754; (13) 38 Cyc. 1693; (14) 26 Cyc. 1125; (15) 38 Cyc. 1778; (16) 3 Cyc. 348. As to the question of assumption of risk being one for the jury, see 131 Am. St. 437. As to the duty of an employer to furnish safe tools and appliances, see 98 Am. St. 496. On the question of the assumption of obvious risks of hazardous employment, see 1 L. R. A. (N. S.) 272. As to servant's assumption of risk from

latent danger or defect, see 17 L. R. A. (N. S.) 76. The question of the rights of an employe to rely on statute requiring signal to be given by train approaching crossing is treated in 40 L R. A. (N. S.) 1105.